## GUTIERREZ DE MARTINEZ ET AL. *v.* LAMAGNO ET AL.

No. 94–167.   Argued March 22, 1995—Decided June 14, 1995

GINSBURG, J., delivered the opinion of the Court with respect to Parts I, II, and III, in which STEVENS, O'CONNOR, KENNEDY, and BREYER, JJ., joined, and an opinion with respect to Part IV, in which STEVENS, KENNEDY, and BREYER, JJ., joined. O'CONNOR, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 437. SOUTER, J., filed a dissenting opinion, in which REHNQUIST, C. J., and SCALIA and THOMAS, JJ., joined, *post*, p. 438.

*Isidoro Rodriguez* argued the cause and filed a brief for petitioners. *Malcolm L. Stewart* argued the cause for the federal respondents in support of petitioners pursuant to this Court's Rule 12.4. On the briefs were *Solicitor General Days, Assistant Attorney General Hunger, Deputy Solicitor General Bender, Jeffrey P. Minear, Barbara L. Herwig,* and *Peter R. Maier.*

*Andrew J. Maloney III* argued the cause and filed a brief for respondent Lamagno.

*Michael K. Kellogg,* by invitation of the Court, 513 U. S. 1010, argued the cause and filed a brief as *amicus curiae* urging affirmance.

JUSTICE GINSBURG delivered the opinion of the Court, except as to Part IV.

When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort

Compensation Act of 1988 (commonly known as the Westfall Act) empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . ." 28 U. S. C. § 2679(d)(1). Upon certification, the employee is dismissed from the action and the United States is substituted as defendant. The case then falls under the governance of the Federal Tort Claims Act (FTCA), ch. 753, 60 Stat. 812, 842. Generally, such cases unfold much as cases do against other employers who concede *respondeat superior* liability. If, however, an exception to the FTCA shields the United States from suit, the plaintiff may be left without a tort action against any party.

This case is illustrative. The Attorney General certified that an allegedly negligent employee "was acting within the scope of his . . . employment" at the time of the episode in suit. Once brought into the case as a defendant, however, the United States asserted immunity, because the incident giving rise to the claim occurred abroad and the FTCA excepts "[a]ny claim arising in a foreign country." 28 U. S. C. § 2680(k). Endeavoring to redeem their lawsuit, plaintiffs (petitioners here) sought court review of the Attorney General's scope-of-employment certification, for if the employee was acting outside the scope of his employment, the plaintiffs' tort action could proceed against him. The lower courts held the certification unreviewable. We reverse that determination and hold that the scope-of-employment certification is reviewable in court.

## I

Shortly before midnight on January 18, 1991, in Barranquilla, Colombia, a car driven by respondent Dirk A. Lamagno, a special agent of the United States Drug Enforcement Administration (DEA), collided with petitioners' car. Petitioners, who are citizens of Colombia, allege that La-

magno was intoxicated and that his passenger, an unidentified woman, was not a federal employee.

Informed that diplomatic immunity shielded Lamagno from suit in Colombia, petitioners filed a diversity action against him in the United States District Court for the Eastern District of Virginia, the district where Lamagno resided. Alleging that Lamagno's negligent driving caused the accident, petitioners sought compensation for physical injuries and property damage.[1] In response, the local United States Attorney, acting pursuant to the Westfall Act, certified on behalf of the Attorney General that Lamagno was acting within the scope of his employment at the time of the accident. The certification, as is customary, stated no reasons for the U. S. Attorney's scope-of-employment determination.[2]

In the Westfall Act, Congress instructed:

> "Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding

---

[1] Petitioners also filed an administrative claim with the DEA pursuant to 84 Stat. 1284, as amended, 21 U. S. C. § 904, which authorizes settlement of tort claims that "arise in a foreign country in connection with the operations of the [DEA] abroad." The DEA referred the claim to the Department of Justice, which has not yet made a final administrative decision on that claim. As read by the Fourth Circuit, § 904 contains no express or implied provision for judicial review. App. 15.

[2] The certification read:

"I, Richard Cullen, United States Attorney for the Eastern District of Virginia, acting pursuant to the provisions of 28 U. S. C. § 2679, and by virtue of the authority vested in me by the Appendix to 28 C.F.R. § 15.3 (1991), hereby certify that I have investigated the circumstances of the incident upon which the plaintiff[s'] claim is based. On the basis of the information now available with respect to the allegations of the complaint, I hereby certify that defendant Dirk A. Lamagno was acting within the scope of his employment as an employee of the United States of America at the time of the incident giving rise to the above entitled action." App. 1–2.

commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant." § 2679(d)(1).

Thus, absent judicial review and court rejection of the certification, Lamagno would be released from the litigation; furthermore, he could not again be pursued in any damages action arising from the "same subject matter." § 2679(b)(1). Replacing Lamagno, the United States would become sole defendant.

Ordinarily, scope-of-employment certifications occasion no contest. While the certification relieves the employee of responsibility, plaintiffs will confront instead a financially reliable defendant. But in this case, substitution of the United States would cause the demise of the action: Petitioners' claims "ar[ose] in a foreign country," FTCA, 28 U. S. C. § 2680(k), and thus fell within an exception to the FTCA's waiver of the United States' sovereign immunity. See § 2679(d)(4) (upon certification, the action "shall proceed in the same manner as any action against the United States . . . and shall be subject to the limitations and exceptions applicable to those actions"). Nor would the immunity of the United States allow petitioners to bring Lamagno back into the action. See *United States* v. *Smith,* 499 U. S. 160 (1991).

To keep their action against Lamagno alive, and to avoid the fatal consequences of unrecallable substitution of the United States as the party defendant, petitioners asked the District Court to review the certification. Petitioners maintained that Lamagno was acting outside the scope of his employment at the time of the accident; certification to the contrary, they argued, was groundless and untrustworthy. Following Circuit precedent, *Johnson* v. *Carter,* 983 F. 2d 1316 (CA4) (en banc), cert. denied, 510 U. S. 812 (1993), the District Court held the certification unreviewable, substituted the United States for Lamagno, and dismissed peti-

tioners' suit. App. 7–9. In an unadorned order, the Fourth Circuit affirmed. 23 F. 3d 402 (1994).

The Circuits divide sharply on this issue. Parting from the Fourth Circuit, most of the Courts of Appeals have held certification by the Attorney General or her delegate amenable to court review.[3] We granted certiorari to resolve the conflict, 513 U. S. 998 (1994),[4] and we now reverse the Fourth Circuit's judgment.

## II

## A

We encounter in this case the familiar questions: where is the line to be drawn; and who decides. Congress has firmly answered the first question. "Scope of employment" sets the line. See § 2679(b)(1); *United States* v. *Smith*, 499 U. S. 160 (1991). If Lamagno is inside that line, he is not subject to petitioners' suit; if he is outside the line, he is personally answerable. The sole question, then, is *who decides* on which side of the line the case falls: the local United

---

[3] Compare *Johnson* v. *Carter*, 983 F. 2d 1316 (CA4) (en banc), cert. denied, 510 U. S. 812 (1993); *Garcia* v. *United States*, 22 F. 3d 609, suggestion for rehearing en banc granted, 22 F. 3d 612 (CA5 1994); *Aviles* v. *Lutz*, 887 F. 2d 1046, 1048–1049 (CA10 1989) (certification not reviewable), with *Nasuti* v. *Scannell*, 906 F. 2d 802, 812–814 (CA1 1990); *McHugh* v. *University of Vermont*, 966 F. 2d 67, 71–75 (CA2 1992); *Melo* v. *Hafer*, 912 F. 2d 628, 639–642 (CA3 1990), aff'd on other grounds, 502 U. S. 21 (1991); *Arbour* v. *Jenkins*, 903 F. 2d 416, 421 (CA6 1990); *Hamrick* v. *Franklin*, 931 F. 2d 1209 (CA7), cert. denied, 502 U. S. 869 (1991); *Brown* v. *Armstrong*, 949 F. 2d 1007, 1010–1011 (CA8 1991); *Meridian Int'l Logistics, Inc.* v. *United States*, 939 F. 2d 740, 744–745 (CA9 1991); *S. J. & W. Ranch, Inc.* v. *Lehtinen*, 913 F. 2d 1538, 1543 (1990), modified, 924 F. 2d 1555 (CA11), cert. denied, 502 U. S. 813 (1991); *Kimbro* v. *Velten*, 30 F. 3d 1501 (CADC 1994), cert. pending, No. 94–6703 (certification reviewable).

[4] The United States, in accord with petitioners, reads the Westfall Act to allow a plaintiff to challenge the Attorney General's scope-of-employment certification. We therefore invited Michael K. Kellogg to brief and argue this case, as *amicus curiae*, in support of the judgment below. 513 U. S. 1010 (1994). Mr. Kellogg accepted the appointment and has well fulfilled his assigned responsibility.

States Attorney, unreviewably or, when that official's decision is contested, the court. Congress did not address this precise issue unambiguously, if at all. As the division in the lower courts and in this Court shows, the Westfall Act is, on the "who decides" question we confront, open to divergent interpretation.

Two considerations weigh heavily in our analysis, and we state them at the outset. First, the Attorney General herself urges review, mindful that in cases of the kind petitioners present, the incentive of her delegate to certify is marked. Second, when a Government official's determination of a fact or circumstance—for example, "scope of employment"—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable. Instead, federal judges traditionally proceed from the "strong presumption that Congress intends judicial review." *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 670 (1986); see *id.*, at 670–673; *Abbott Laboratories* v. *Gardner*, 387 U. S. 136, 140 (1967). Chief Justice Marshall long ago captured the essential idea:

> "It would excite some surprise if, in a government of laws and of principle, furnished with a department whose appropriate duty it is to decide questions of right, not only between individuals, but between the government and individuals; a ministerial officer might, at his discretion, issue this powerful process . . . leaving to [the claimant] no remedy, no appeal to the laws of his country, if he should believe the claim to be unjust. But this anomaly does not exist; this imputation cannot be cast on the legislature of the United States." *United States* v. *Nourse*, 9 Pet. 8, 28–29 (1835).

Accordingly, we have stated time and again that judicial review of executive action "will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories*, 387 U. S., at 140 (citing

cases). No persuasive reason for restricting access to judicial review is discernible from the statutory fog we confront here.

## B

Congress, when it composed the Westfall Act, legislated against a backdrop of judicial review. Courts routinely reviewed the local United States Attorney's scope-of-employment certification under the Westfall Act's statutory predecessor, the Federal Drivers Act, Pub. L. 87–258, §1, 75 Stat. 539 (previously codified as 28 U. S. C. §2679(d) (1982 ed.)). Similar to the Westfall Act but narrower in scope, the Drivers Act made the FTCA the exclusive remedy for motor vehicle accidents involving federal employees acting within the scope of their employment. 75 Stat. 539 (previously codified at 28 U. S. C. §2679(b) (1982 ed.)). The Drivers Act, like the Westfall Act, had a certification scheme, though it applied only to cases brought in state court. Once the Attorney General or his delegate certified that the defendant driver was acting within the scope of employment, the case was removed to federal court and the United States was substituted as defendant. But the removal and substitution were subject to the federal court's control; a court determination that the driver was acting outside the scope of his employment would restore the case to its original status. See, e. g., McGowan v. Williams, 623 F. 2d 1239, 1242 (CA7 1980); Seiden v. United States, 537 F. 2d 867, 870 (CA6 1976); Levin v. Taylor, 464 F. 2d 770, 771 (CADC 1972).

When Congress wrote the Westfall Act, which covers federal employees generally and not just federal drivers, the legislators had one purpose firmly in mind. That purpose surely was not to make the Attorney General's delegate the final arbiter of "scope-of-employment" contests. Instead, Congress sought to override Westfall v. Erwin, 484 U. S. 292 (1988). In Westfall, we held that, to gain immunity from suit for a common-law tort, a federal employee would have

to show (1) that he was acting within the scope of his employment, and (2) that he was performing a discretionary function. *Id.*, at 299. Congress reacted quickly to delete the "discretionary function" requirement, finding it an unwarranted judicial imposition, one that had "created an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce." § 2(a)(5), 102 Stat. 4563.

The Westfall Act trained on this objective: to "return Federal employees to the status they held prior to the *Westfall* decision." H. R. Rep. No. 100–700, p. 4 (1988). Congress was notably concerned with the *significance* of the scope-of-employment inquiry—that is, it wanted the employee's personal immunity to turn on that question alone. See § 2(b), 102 Stat. 4564 (purpose of Westfall Act is to "protect Federal employees from personal liability for common law torts committed within the scope of their employment"). But nothing tied to the purpose of the legislation shows that Congress meant the Westfall Act to commit the critical "scope-of-employment" inquiry to the unreviewable judgment of the Attorney General or her delegate, and thus to alter fundamentally the answer to the "who decides" question.

C

Construction of the Westfall Act as Lamagno urges—to deny to federal courts authority to review the Attorney General's scope-of-employment certification—would oblige us to attribute to Congress two highly anomalous commands. Not only would we have to accept that Congress, by its silence, authorized the Attorney General's delegate to make determinations of the kind at issue without any judicial check. At least equally perplexing, the proposed reading would cast Article III judges in the role of petty functionaries, persons required to enter as a court judgment an executive officer's decision, but stripped of capacity to evaluate independently whether the executive's decision is correct.

1

In the typical case, by certifying that an employee was acting within the scope of his employment, the Attorney General enables the tort plaintiff to maintain a claim for relief under the FTCA, a claim against the financially reliable United States. In such a case, the United States, by certifying, is acting *against* its financial interest, exposing itself to liability as would any other employer at common law who admits that an employee acted within the scope of his employment. See Restatement (Second) of Agency § 219 (1958).

The situation alters radically, however, in the unusual case—like the one before us—that involves an exception to the FTCA.[5] When the United States retains immunity from suit, certification disarms plaintiffs. They may not proceed against the United States, nor may they pursue the employee shielded by the certification. *Smith*, 499 U. S., at 166–167. In such a case, the certification surely does not qualify as a declaration against the Government's interest: it does not expose the United States to liability, and it shields a federal employee from liability.

But that is not all. The impetus to certify becomes overwhelming in a case like this one, as the Attorney General, in siding with petitioners, no doubt comprehends. If the local

---

[5] Several of the FTCA's 13 exceptions are for cases in which other compensatory regimes afford relief. *Kosak* v. *United States*, 465 U. S. 848, 858 (1984) (one rationale for exceptions is "not extending the coverage of the [FTCA] to suits for which adequate remedies were already available"). See, e. g., § 2680(c) (excluding "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty"); § 2680(d) (excluding "[a]ny claim for which a remedy is provided by" the Public Vessels Act, "relating to claims or suits in admiralty against the United States"); § 2680(e) (excluding "[a]ny claim arising out of an act or omission of any employee of the Government in administering the provisions of" the Trading with the Enemy Act); 2 L. Jayson, Handling Federal Tort Claims: Administrative and Judicial Remedies 13–8, 13–25, 13–43 to 13–44 (1995) (explaining these exclusions as cases in which other remedies are available).

United States Attorney, to whom the Attorney General has delegated responsibility, refuses certification, the employee can make a federal case of the matter by alleging a wrongful failure to certify. See § 2679(d)(3). The federal employee's claim is one the United States Attorney has no incentive to oppose for the very reason the dissent suggests, see *post*, at 448–449: Win or lose, the United States retains its immunity; hence, were the United States to litigate "scope of employment" against its own employee—thereby consuming the local United States Attorney's precious litigation resources— it would be litigating solely for the benefit of the plaintiff. Inevitably, the United States Attorney will feel a strong tug to certify, even when the merits are cloudy, and thereby "do a favor," *post*, at 448, both for the employee and for the United States as well, at a cost borne solely, and perhaps quite unfairly, by the plaintiff.

The argument for unreviewability in such an instance runs up against a mainstay of our system of government. Madison spoke precisely to the point:

> "No man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity. With equal, nay with greater reason, a body of men are unfit to be both judges and parties at the same time . . . ." The Federalist No. 10, p. 79 (C. Rossiter ed. 1961).

See *In re Murchison*, 349 U. S. 133, 136 (1955) ("[O]ur system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome."); *Spencer* v. *Lapsley*, 20 How. 264, 266 (1858) (recognizing statute accords with this maxim); see also Publius Syrus, Moral Sayings 51 (D. Lyman transl. 1856) ("No one should be judge in his own cause."); B. Pascal, Thoughts, Letters and Opuscules 182 (O. Wight transl. 1859) ("It is not permitted to the most equitable of men to be a

judge in his own cause."); 1 W. Blackstone, Commentaries *91 ("[I]t is unreasonable that any man should determine his own quarrel.").

In sum, under Lamagno's reading of the congressional product at issue, whenever the case falls within an exception to the FTCA, the Attorney General sits as an unreviewable "judge in her own cause"; she can block petitioners' way to a tort action in court, at no cost to the federal treasury, while avoiding litigation in which the United States has no incentive to engage, and incidentally enhancing the morale—or at least sparing the purse—of federal employees. The United States, as we have noted, disavows this extraordinary, conspicuously self-serving interpretation. See *supra,* at 424, and n. 4. Recognizing that a United States Attorney, in cases of this order, is hardly positioned to act impartially, the Attorney General reads the law to allow judicial review.

2

If Congress made the Attorney General's delegate sole judge, despite the apparent conflict of interest, then Congress correspondingly assigned to the federal court only rubber-stamp work. Upon certification in a case such as this one, the United States would automatically become the defendant and, just as automatically, the case would be dismissed. The key question presented—scope of employment—however contestable in fact, would receive no judicial audience. The court could do no more, and no less, than convert the executive's scarcely disinterested decision into a court judgment. This strange course becomes all the more surreal when one adds to the scene the absence of an obligation on the part of the Attorney General's delegate to conduct a fair proceeding, indeed, any proceeding. She need not give the plaintiff an opportunity to speak to the "scope" question, or even notice that she is considering the question. Nor need she give any explanation for her action.

Congress may be free to establish a compensation scheme that operates without court participation. Cf. 21 U. S. C. § 904 (authorizing executive settlement of tort claims that "arise in a foreign country in connection with the operations of the [DEA] abroad"). But that is a matter quite different from instructing a court automatically to enter a judgment pursuant to a decision the court has no authority to evaluate. Cf. *United States* v. *Klein,* 13 Wall. 128, 146 (1872) (Congress may not "prescribe rules of decision to the Judicial Department of the government in cases pending before it"). We resist ascribing to Congress an intention to place courts in this untenable position.[6]

### III

We return now, in more detail, to the statutory language to determine whether it overcomes the presumption favoring judicial review, the tradition of court review of scope certifications, and the anomalies attending foreclosure of review.

The certification, removal, and substitution provisions of the Westfall Act, 28 U. S. C. §§ 2679(d)(1)–(3),[7] work together

---

[6] To the reality of an executive decisionmaker with scant incentive to act impartially, and a court used to rubber-stamp that decisionmaker's judgment, the dissent can only reply that these are "rare cases." *Post,* at 447. But this dispute centers solely on cases fitting the description "rare." See *supra,* at 422. It is hardly an answer to say that, in other cases, indeed in the great bulk of cases, court offices are not misused.

[7] Section 2679(d) provides in pertinent part:

"(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

"(2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court

to assure that, when scope of employment is in controversy, that matter, key to the application of the FTCA, may be resolved in federal court. To that end, the Act specifically allows employees whose certification requests have been denied by the Attorney General, to contest the denial in court. § 2679(d)(3). If the action was initiated by the tort plaintiff in state court, the Attorney General, on the defendant-employee's petition, is to enter the case and may remove it to the federal court so that the scope determination can be made in the federal forum. *Ibid.*

When the Attorney General has granted certification, if the case is already in federal court (as is this case, because of the parties' diverse citizenship), the United States will be substituted as the party defendant. § 2679(d)(1). If the case was initiated by the tort plaintiff in state court,

---

of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

"(3) In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. A copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d)(4) of the Federal Rules of Civil Procedure. In the event the petition is filed in a civil action or proceeding pending in a State court, the action or proceeding may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending. If, in considering the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court."

the Attorney General is to remove it to the federal court, where, as in a case that originated in the federal forum, the United States will be substituted as the party defendant. § 2679(d)(2).

The statute next instructs that the "certification of the Attorney General shall conclusively establish scope of office or employment *for purposes of removal.*" *Ibid.* (emphasis added). The meaning of that instruction, in the view of petitioners and the Attorney General, is just what the emphasized words import. Congress spoke in discrete sentences in § 2679(d)(2) first of removal, then of substitution. Next, Congress made the Attorney General's certificate conclusive solely for purposes of removal, and notably not for purposes of substitution. It follows, petitioners and the Attorney General conclude, that the scope-of-employment judgment determinative of substitution can and properly should be checked by the court, *i. e.*, the Attorney General's scarcely disinterested certification on that matter is by statute made the first, but not the final word.

Lamagno's construction does not draw on the "certification . . . shall [be conclusive] . . . for purposes of removal" language of § 2679(d)(2).[8] Instead, Lamagno emphasizes the word "shall" in the statement: "Upon certification by the Attorney General . . . any civil action or proceeding . . . *shall* be deemed an action against the United States . . . , and the United States *shall* be substituted as the party defendant." § 2679(d)(1) (emphasis added). Any doubt as to the commanding force of the word "shall,"[9] Lamagno urges, is dis-

---

[8] In fact, under Lamagno's construction, this provision has no work to do, because Congress would have had no cause to insulate removal from challenge. If certification cannot be overturned, as Lamagno urges, then a firm basis for federal jurisdiction is ever present—the United States is a party, and the FTCA governs the case.

[9] Though "shall" generally means "must," legal writers sometimes use, or misuse, "shall" to mean "should," "will," or even "may." See D. Mellinkoff, Mellinkoff's Dictionary of American Legal Usage 402–403 (1992) ("shall" and "may" are "frequently treated as synonyms" and their mean-

pelled by this further feature: the Westfall Act's predecessor, the Federal Drivers Act, provided for court review of "scope-of-employment" certifications at the tort plaintiff's behest. Not only does the Westfall Act fail to provide for certification challenges by tort plaintiffs,[10] Lamagno underscores, but the Act prominently provides for court review of

ing depends on context); B. Garner, Dictionary of Modern Legal Usage 939 (2d ed. 1995) ("[C]ourts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and vice versa."). For example, certain of the Federal Rules use the word "shall" to authorize, but not to require, judicial action. See, *e. g.,* Fed. Rule Civ. Proc. 16(e) ("The order following a final pretrial conference *shall* be modified only to prevent manifest injustice.") (emphasis added); Fed. Rule Crim. Proc. 11(b) (A *nolo contendere* plea "*shall* be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.") (emphasis added).

[10] The dissent argues that Congress must have meant to foreclose judicial review of substitution when it omitted from the Westfall Act the Drivers Act language authorizing such review. See *post,* at 439–440, 443. But this language likely was omitted for another reason. It appeared in the Drivers Act provision authorizing the return of removed cases to state court: "Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit . . . is not available against the United States, the case shall be remanded to·the State court." 75 Stat. 539 (previously codified at 28 U. S. C. § 2679(d) (1982 ed.)). Congress likely omitted this provision, the thrust of which was to authorize remands, because it had decided to foreclose needless shuttling of a case from one court to another—a decision evident also in the Westfall Act language making certification "conclusiv[e] . . . for purposes of removal." See § 2679(d)(2). The omission thus tells us little about Congress' will concerning review of substitution.

The dissent, moreover, draws inconsistent inferences from congressional silence. Omission of language authorizing review of *substitution,* the dissent argues, forecloses review. See *post,* at 439–440, 443. But omission of language authorizing review of *removal* is not sufficient to foreclose review; rather, to achieve this purpose, the dissent says, Congress took the further step of adding language in § 2679(d)(2) making review "conclusiv[e] . . . for purposes of removal." See *post,* at 444–445.

refusals to certify at the behest of defending employees. See § 2679(d)(3). Congress, in Lamagno's view, thus plainly intended the one-sided review, *i. e.,* a court check at the call of the defending employee, but no check at the tort plaintiff's call.

We recognize that both sides have tendered plausible constructions of a text most interpreters have found far from clear. See, *e. g., McHugh* v. *University of Vermont,* 966 F. 2d 67, 72 (CA2 1992) ("[T]he text of the Westfall Act, viewed as a whole, is ambiguous."); *Arbour* v. *Jenkins,* 903 F. 2d 416, 421 (CA6 1990) ("[T]he scope certification provisions of the Westfall Act as a whole . . . [are] ambiguous regarding the reviewability of the Attorney General's scope certification."). Indeed, the United States initially took the position that the local United States Attorney's scope-of-employment certifications are conclusive and unreviewable but, on further consideration, changed its position. See Brief for United States 14, n. 4. Because the statute is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical judgments are not the kind federal courts are set up to render. Under our reading, the Attorney General's certification that a federal employee was acting within the scope of his employment—a certification the executive official, in cases of the kind at issue, has a compelling interest to grant—does not conclusively establish as correct the substitution of the United States as defendant in place of the employee.

## IV

Treating the Attorney General's certification as conclusive for purposes of removal but not for purposes of substitution, *amicus* ultimately argues, "raise[s] a potentially serious Article III problem." Brief for Michael K. Kellogg as *Amicus Curiae* 29. If the certification is rejected, because the fed-

eral court concludes that the employee acted outside the scope of his employment, and if the tort plaintiff and the employee resubstituted as defendant are not of diverse citizenship, *amicus* urges, then the federal court will be left with a case without a federal question to support the court's subject-matter jurisdiction. This last-pressed argument by *amicus* largely drives the dissent. See *post,* at 440–443.

This case itself, we note, presents not even the specter of an Article III problem. The case was initially instituted in federal court; it was not removed from a state court. The parties' diverse citizenship gave petitioners an entirely secure basis for filing in federal court.

In any event, we do not think the Article III problem *amicus* describes is a grave one. There may no longer be a federal question once the federal employee is resubstituted as defendant, but in the category of cases *amicus* hypothesizes, there *was* a nonfrivolous federal question, certified by the local United States Attorney, when the case was removed to federal court. At that time, the United States was the defendant, and the action was thus under the FTCA. Whether the employee was acting within the scope of his federal employment is a significant federal question—and the Westfall Act was designed to assure that this question could be aired in a federal forum. See *supra,* at 430–432. Because a case under the Westfall Act thus "raises [a] questio[n] of substantive federal law at the very outset," it "clearly 'arises under' federal law, as that term is used in Art. III." *Verlinden B. V.* v. *Central Bank of Nigeria,* 461 U. S. 480, 493 (1983).

In adjudicating the scope-of-federal-employment question "at the very outset," the court inevitably will confront facts relevant to the alleged misconduct, matters that bear on the state tort claims against the employee. Cf. *Mine Workers* v. *Gibbs,* 383 U. S. 715, 725 (1966) (approving exercise of pendent jurisdiction when federal and state claims have "a common nucleus of operative fact" and would "ordinarily be

expected to [be tried] all in one judicial proceeding"). "[C]onsiderations of judicial economy, convenience and fairness to litigants," *id.*, at 726, make it reasonable and proper for the federal forum to proceed beyond the federal question to final judgment once it has invested time and resources on the initial scope-of-employment contest.[11]

If, in preserving judicial review of scope-of-employment certifications, Congress "approach[ed] the limit" of federal-court jurisdiction, see *post*, at 441—and we do not believe it did—we find the exercise of federal-court authority involved here less ominous than the consequences of declaring certifications of the kind at issue uncontestable: The local United States Attorney, whose conflict of interest is apparent, would be authorized to make final and binding decisions insulating both the United States and federal employees like Lamagno from liability while depriving plaintiffs of potentially meritorious tort claims. The Attorney General, having weighed the competing considerations, does not read the statute to confer on her such extraordinary authority. Nor should we assume that Congress meant federal courts to accept cases only to stamp them "Dismissed" on an interested executive official's unchallengeable representation. The statute is fairly construed to allow petitioners to present to the Dis-

---

[11] The dissent charges that for Congress to allow cases like this one to open and finish in federal court, when brought there by the local United States Attorney, "implies a jurisdictional tenacity," *post*, at 443, and allows losers always to win, *post*, at 442. Under the dissent's abstract and unrelenting logic, it is a jurisdictional flight for Congress to assign to federal courts tort actions in which there is a genuine issue of fact whether a federal employee acted within the scope of his federal employment. The dissent's solution for this discrete class of cases: plaintiffs always lose. For the above-stated reasons, we disagree. See also Goldberg-Ambrose, Protective Jurisdiction of the Federal Courts, 30 UCLA L. Rev. 542, 549 (1983) ("If [the legal relationships on which the plaintiff necessarily relies] are federally created, even in small part, the claim should be treated as one that arises under federal law within the meaning of article III, independent of any protective jurisdiction theory.").

trict Court their objections to the Attorney General's scope-of-employment certification, and we hold that construction the more persuasive one.

*    *    *

For the reasons stated, the judgment of the United States Court of Appeals for the Fourth Circuit is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE O'CONNOR, concurring in part and concurring in the judgment.

For the reasons given in Parts I–III of the Court's opinion, which I join, I agree with the Court (and the Attorney General) that the Attorney General's scope-of-employment certifications in Westfall Act cases should be judicially reviewable. I do not join Part IV of the opinion, however. That discussion all but conclusively resolves a difficult question of federal jurisdiction that, as JUSTICE GINSBURG notes, is not presented in this case. *Ante,* at 435. In my view, we should not resolve that question until it is necessary for us to do so.

Of course, I agree with the dissent, *post,* at 441, that we ordinarily should construe statutes to avoid serious constitutional questions, such as that discussed in Part IV of the Court's opinion, when it is fairly possible to do so. See *United States* v. *X-Citement Video, Inc.,* 513 U. S. 64, 78 (1994); *Rust* v. *Sullivan,* 500 U. S. 173, 223–225 (1991) (O'CONNOR, J., dissenting). And I recognize that reversing the Court of Appeals' judgment in this case may make it impossible to avoid deciding that question in a future case. But even such an important canon of statutory construction as that favoring the avoidance of serious constitutional questions does not *always* carry the day. In this case, as described in detail by the Court, *ante,* at 423–434, several other important legal principles, including the presumption in

favor of judicial review of executive action, *ante*, at 424, the prohibition against allowing anyone "'to be a judge in his own cause,'" *ante*, at 428 (quoting The Federalist No. 10, p. 79 (C. Rossiter ed. 1961) (J. Madison)), the peculiarity inherent in concluding that Congress has "assigned to the federal court only rubber-stamp work," *ante*, at 429, and the "sound general rule that Congress is deemed to avoid redundant drafting," *post*, at 444 (SOUTER, J., dissenting); *ante*, at 432, and n. 8, point in the other direction. The highly unusual confluence of those principles in this case persuades me that, despite the fact that the dissent's reading has the virtue of avoiding the possibility that a difficult constitutional question will arise in a future case, reversal is nonetheless the proper course.

JUSTICE SOUTER, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE THOMAS join, dissenting.

One does not instinctively except to a statutory construction that opens the door of judicial review to an individual who complains of a decision of the Attorney General, when the Attorney General herself is ready to open the door. But however much the Court and the Attorney General may claim their reading of the Westfall Act to be within the bounds of reasonable policy, the great weight of interpretive evidence shows that they misread Congress's policy. And so I respectfully dissent.

The two principal textual statements under examination today are perfectly straightforward. "Upon certification by the Attorney General . . . any civil action or proceeding . . . shall be deemed an action against the United States . . . , and the United States shall be substituted as the party defendant." 28 U. S. C. § 2679(d)(1); see also § 2679(d)(4) ("Upon certification, any action or proceeding . . . shall proceed in the same manner as any action against the United States filed pursuant to [the FTCA] . . ."). Notwithstanding the Court's observation that some contexts can leave the

word "shall" a bit slippery, *ante*, at 432–433, n. 9, we have repeatedly recognized the normally uncompromising directive that it carries. See *United States* v. *Monsanto*, 491 U. S. 600, 607 (1989); *Anderson* v. *Yungkau*, 329 U. S. 482, 485 (1947); see also *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 61 (1982) *(per curiam); Association of Civilian Technicians* v. *FLRA*, 22 F. 3d 1150, 1153 (CADC 1994) ("The word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive"); Black's Law Dictionary 1375 (6th ed. 1990) ("As used in statutes . . . this word is generally imperative or mandatory"). There is no hint of wobbling in the quoted language,[1] and the normal meaning of its plain provisions that substitution is mandatory on certification is the best evidence of the congressional intent that the Court finds elusive (*ante*, at 425, 426). That normal meaning and manifest intent is confirmed by additional textual evidence and by its consonance with normal jurisdictional assumptions.

We would not, of course, read "shall" as so uncompromising if the Act also included some express provision for review at the behest of the tort plaintiff when the Attorney General certifies that the acts charged were inside the scope of a defendant employee's official duties. But the Westfall Act has no provision to that effect, and the very fact that its predecessor, the Federal Drivers Act, Pub. L. 87–258, 75 Stat. 539, combined "shall" with just such authorization for review at the will of a disappointed tort plaintiff, *ibid.* (previously codified at 28 U. S. C. § 2679(d) (1982 ed.)),[2] makes the

---

[1] The Court provides two examples from the Federal Rules in which the circumstances under which action "shall" be taken are limited by use of the word "only." *Ante*, at 432–433, n. 9. There is, of course, no similar language of limitation in § 2679(d)(1). The only prerequisite for substitution under the Westfall Act is certification.

[2] The Drivers Act provided for certification only in cases originating in state court, and judicial review was perforce limited to those cases. See 75 Stat. 539 (previously codified at 28 U. S. C. § 2679(d) (1982 ed.)).

absence of a like provision from the Westfall Act especially good evidence that Congress meant to drop this feature from the system, leaving "shall" to carry its usual unconditional message. See *Brewster* v. *Gage*, 280 U. S. 327, 337 (1930) ("The deliberate selection of language so differing from that used in . . . earlier Acts indicates that a change of law was intended"); 2A N. Singer, Sutherland on Statutory Construction § 51.02, p. 454 (4th ed. 1984). That conclusion gains further force from the presence in the Westfall Act of an express provision for judicial review at the behest of a defending employee, when the Attorney General refuses to certify that the acts fell within the scope of Government employment. See 28 U. S. C. § 2679(d)(3) ("[i]n the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment"). Providing authority in one circumstance but not another implies an absence of authority in the statute's silence. See *Russello* v. *United States*, 464 U. S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"); see also *United States* v. *Naftalin*, 441 U. S. 768, 773–774 (1979).

Even if these textually grounded implications were not enough to confirm a plain reading of the text and decide the case, an anomalous jurisdictional consequence of the Court's position should be enough to warn us away from treating the Attorney General's certification as reviewable. The Court recognizes that there is nothing equivocal about the Act's provision that once a state tort action has been removed to a federal court after a certification by the Attorney General, it may never be remanded to the state system: "certification of the Attorney General shall conclusively establish scope of

office or employment for purposes of removal," 28 U. S. C. § 2679(d)(2). As the principal opinion concedes, then, *ante*, at 435, its reading supposes that Congress intended federal courts to retain jurisdiction over state-law tort claims between nondiverse parties even after determining that the Attorney General's certification (and thus the United States's presence as the defendant) was improper. But there is a serious problem, on the Court's reasoning, in requiring a federal district court, after rejecting the Attorney General's certification, to retain jurisdiction over a claim that does not implicate federal law in any way. Although we have declined recent invitations to define the outermost limit of federal-court jurisdiction authorized by the "Arising Under" Clause of Article III of the Constitution,[3] see *Mesa* v. *California*, 489 U. S. 121, 136–137 (1989); *Verlinden B. V.* v. *Central Bank of Nigeria*, 461 U. S. 480 (1983), on the Court's reading this statute must at the very least approach the limit, if it does not cross the line. This, then, is just the case for adhering to the Court's practice of declining to construe a statute as testing this limit when presented with a sound alternative. *Mesa* v. *California, supra,* at 137, citing *Califano* v. *Yamasaki,* 442 U. S. 682, 693 (1979).

The principal opinion departs from this practice, however. Instead, it looks for jurisdictional solace in the theory that once the Attorney General has issued a scope-of-employment certification, the United States's (temporary) appearance as the sole defendant suffices forever to support jurisdiction in federal court, even if the district court later rejects the Attorney General's certification and resubstitutes as defendant the federal employee first sued in state court. *Ante*, at 434–435. Whether the employee was within the scope of his federal employment, the principal opinion reasons, is itself a suf-

---

[3] "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . . ." U. S. Const., Art. III, § 2, cl. 1.

ficient federal question to bring the case into federal court, and "'considerations of judicial economy, convenience and fairness to litigants,'" *ante*, at 436, quoting *Mine Workers* v. *Gibbs*, 383 U. S. 715, 726 (1966), are sufficient to keep it there even after a judicial determination that the United States is not the proper defendant.

But the fallacy of this conclusion appears as soon as one recalls the fact that substitution of the United States as defendant (which establishes federal-question jurisdiction) is exclusively dependant on the scope-of-employment certification. The challenge to the certification is thus the equivalent of a challenge to the essential jurisdictional fact that the United States is a party, and the federal court's jurisdiction to review scope of employment (on the principal opinion's theory) is merely an example of any court's necessary author-ity to rule on a challenge to its own jurisdiction to try a particular action. To argue, as the principal opinion does, that authority to determine scope of employment justifies retention of jurisdiction whenever evidence bearing on jurisdiction and liability overlaps, is therefore tantamount to saying the authority to determine whether a court has jurisdiction over the cause of action supplies the very jurisdiction that is subject to challenge. It simply obliterates the distinction between the authority to determine jurisdiction and the jurisdiction that is the subject of the challenge, and the party whose jurisdictional claim was challenged will never lose: litigating the question whether an employee's allegedly tortious acts fall within the scope of employment will, of course, always require some evidence to show what the acts were. Accordingly, there will always be overlap between evidence going to the scope-of-employment determination and evidence bearing on the underlying liability claimed by the plaintiff, and for this reason federal-question jurisdiction in these cases becomes inevitable on the Court's view. The right to challenge it therefore becomes meaningless, as does

the very notion of jurisdictional limitation. The Court's cure for the jurisdictional disease is thus to kill the concept of federal-question jurisdiction as a limit on what federal courts may entertain.

It would never be sound to attribute such an aberrant concept of federal-question jurisdiction to Congress; it is impossible to do so when we realize that Congress expressly provided that when a federal court considers a challenge to the Attorney General's refusal to certify (raised by an employee-defendant) and finds the act outside the scope of employment, a case that originated in a state court must be remanded back to the state court. See 28 U. S. C. § 2679(d) (3). In such a case, there will have been just as much overlap of jurisdictional evidence and liability evidence as there will be when the jurisdictional issue is litigated at the behest of a plaintiff (as here) who contests a scope-of-employment certification. If Congress thought the federal court should retain jurisdiction when it is revealed that none exists in this latter case, it should have thought so in the former. But it did not, and the reason it did not is obvious beyond any doubt. It assumed a federal court would never be in the position to retain jurisdiction over an action for which a tort plaintiff has shown there is no federal-question basis, and Congress was entitled to assume this, because it had provided that a certification was conclusive.

In sum, the congressional decision to make the Attorney General's certification conclusive was couched in plain terms, whose plain meaning is confirmed by contrasting the absence of any provision for review with just such a provision in the predecessor statute, and with an express provision for review of a refusal to certify, contained in the Westfall Act itself. The Court's contrary view implies a jurisdictional tenacity that Congress expressly declined to assert elsewhere in the Act, and invites a difficult and wholly unnecessary constitutional adjudication about the limits of Article

III jurisdiction.  These are powerful reasons to recognize the unreviewability of certification, and the Court's contrary arguments fail to measure up to them.

The Court raises three counterpoints to a straightforward reading of the Act.  First, it suggests that language in § 2679(d)(2) negatively implies that Congress intended to authorize judicial review of scope-of-employment certifications, and that, in fact, the straightforward reading of the statute results in a drafting redundancy.  Second, the Court claims that the straightforward reading creates an oddity by limiting the role of federal courts in certain cases.  Finally, the Court invokes the presumption against judging one's self.

The redundancy argument, it must be said, is facially plausible.  It begins with the sound general rule that Congress is deemed to avoid redundant drafting, *Mackey* v. *Lanier Collection Agency & Service, Inc.*, 486 U. S. 825, 837 (1988); see *Park 'N Fly, Inc.* v. *Dollar Park & Fly, Inc.*, 469 U. S. 189, 196–197 (1985), from which it follows that a statutory interpretation that would render an express provision redundant was probably unintended and should be rejected.  Applying that rule here, the argument is that if certification by the Attorney General conclusively establishes scope of employment for substitution purposes, then there is no need for the final sentence in § 2679(d)(2), that certification "shall conclusively establish scope of office or employment for purposes of removal" in cases brought against federal employees in state court.  If certification is conclusive as to substitution it will be equally conclusive as to removal, since the federal defendant will necessarily be entitled to claim jurisdiction of a federal court under 28 U. S. C. § 1346(b).  See *ante*, at 432, n. 8.  Accordingly, the Court suggests the provision making certification conclusive for purposes of removal must have greater meaning; it must carry the negative implication that certification is not conclusive for purposes of substitution.  *Ante*, at 432.

Sometimes, however, there is an explanation for redundancy, rendering any asserted inference from it too shaky to

be trusted. Cf. *United States Nat. Bank of Ore.* v. *Independent Ins. Agents of America, Inc.*, 508 U. S. 439, 459 (1993). That is the case with the provision that certification is conclusive on the issue of removal from state to federal court. The explanation takes us back to the Westfall Act's predecessor, the Federal Drivers Act, 75 Stat. 539, which was superseded upon passage of the current statute, Pub. L. 100–694, 102 Stat. 4563–4567. The Drivers Act made the FTCA the exclusive source of remedies for injuries resulting from the operation of any motor vehicle by a federal employee acting within the scope of his employment. 28 U. S. C. §2679(b) (1982 ed.). Like the Westfall Act, the Drivers Act authorized the Attorney General to certify that a federal employee sued in state court was acting within the scope of employment during the incident allegedly giving rise to the claim, and it provided in that event for removal to the federal system, as well as for substitution of the United States as the defendant. §2679(d). Unlike the Westfall Act, however, the Drivers Act explicitly directed district courts to review, "on a motion to remand held before a trial on the merits," whether any such case was "one in which a remedy by suit . . . is not available against the United States." *Ibid.* The district courts and the courts of appeals routinely read this language to permit district courts to hear motions to remand challenging the Attorney General's scope-of-employment determination. See *McGowan* v. *Williams*, 623 F. 2d 1239, 1242 (CA7 1980); *Van Houten* v. *Ralls*, 411 F. 2d 940, 942 (CA9), cert. denied, 396 U. S. 962 (1969); *Daugherty* v. *United States*, 427 F. Supp. 222, 223–224 (WD Pa. 1977); accord, *Seiden* v. *United States*, 537 F. 2d 867, 869 (CA6 1976); *Levin* v. *Taylor*, 464 F. 2d 770, 771 (CADC 1972). Given the express permissibility of a motion to remand in order to raise a postremoval challenge to certification under the Drivers Act, when the old Act was superseded, and challenges to certification were eliminated, Congress could sensibly have seen some practical value in the redundancy of making it clear beyond question that the

old practice of considering scope of employment on motions to remand was over.[4]

How then does one assess the force of the redundancy? On my plain reading of the statute, one may take it as an understandable inelegance of drafting. One could, in the alternative, take it as some confirmation for the Court's view, even though the Court's view brings with it both a jurisdictional anomaly and the consequent certainty of a serious constitutional question. Is it not more likely that Congress would have indulged in a little redundancy, than have meant to foist such a pointless need for constitutional litigation onto the federal courts? Given the choice, inelegance may be forgiven.

The Court's second counterpoint is that we should be reluctant to read the Westfall Act in a way that leaves a district court without any real work to do. The Court suggests that my reading does just that in cases like this one, because the district court's sole function after the Attorney General has issued a scope-of-employment certification is to enter an order of dismissal. *Ante*, at 429. Of course, in the bulk of cases with an Attorney General's certification, the sequence envisioned by the Court will never materialize. Even though a district court may not review the scope-of-employment determination, it will still have plenty of work to do in the likely event that either liability or amount of

---

[4] The Court concludes that the provision for review of certification was omitted because it was joined with the provision for remand in the Drivers Act. *Ante*, at 433, n. 10. On a matter of this substance, the explanation does not give Congress credit for much intellectual discrimination. The same footnote also sells this dissent a bit short: we have no need to argue that omission of any provision to review scope of employment, in isolation, would conclusively have foreclosed review, and we have made the very point that a failure to provide for conclusiveness of removal would not have left that issue in doubt; on each point, the various items of interpretive evidence supplied by the text and by textual comparison with the Drivers Act are to be read together in pointing to whatever judgment they support.

damages is disputed, or the United States's claim to immunity under 28 U. S. C. § 2680 turns on disputed facts. Only in those rare cases presenting a claim to federal immunity too airtight for the plaintiff to challenge will the circumstance identified by the Court even occur. It is hard to find any significance in the fact that now and then a certification will relieve a federal court of further work, given the straightforward and amply confirmed provision for conclusiveness.

The Court's final counterpoint to plain reading relies heavily on "the strong presumption that Congress intends judicial review of administrative action," citing a line of cases involving judicial challenges to regulations claimed to be outside the statutory authority of the administrative agencies that promulgated them. See *ante*, at 424–425, citing *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 670–673 (1986); *Abbott Laboratories* v. *Gardner*, 387 U. S. 136, 140 (1967). It is, however, a fair question whether this presumption, usually applied to permit review of agency regulations carrying the force and effect of law, should apply with equal force to a Westfall Act certification. The very narrow factual determination committed to the Attorney General's discretion is related only tangentially, if at all, to her primary executive duties; she determines only whether a federal employee, who will probably not even be affiliated with the Justice Department, acted within the scope of his employment on a particular occasion. This function is far removed from the agency action that gave rise to the presumption of reviewability in *Bowen, supra*, at 668–669, in which the Court considered whether Congress provided the Secretary of Health and Human Services with nonreviewable authority to promulgate certain Medicare distribution regulations, and in *Abbott Laboratories, supra*, at 138–139, in which the Court considered whether Congress provided the Secretary of Health, Education and Welfare with nonreviewable authority to promulgate certain prescription drug labeling regulations.

The Court's answer that the presumption of reviewability should control this case rests on the invocation of a different, but powerful, principle, that no person may be a judge in his own cause. *Ante,* at 427–429. But this principle is not apt here. The Attorney General (who has delegated her Westfall Act responsibilities to the United States Attorneys, 28 CFR § 15.3(a) (1994)) is authorized to determine when any one of nearly three million federal employees was acting within the scope of authority at an allegedly tortious moment. She will characteristically have no perceptible interest in the effect of her certification decision, except in the work it may visit on her employees or the liability it may ultimately place on the National Government (each of which considerations could only influence her to deny certification subject to the employee's right to challenge her). And even where she certifies under circumstances of the Government's immunity, as here, she does not save her employer, the United States, from any liability it would face in the absence of certification; if she refused to certify, the Government would remain as free of exposure as if she issued a certification. The most that can be claimed is that when the Government would enjoy immunity it would be easy to do a favor for a federal employee by issuing a certification. But at this point the possibility of institutional self-interest has simply become *de minimis,*[5] and the likelihood of improper influence

---

[5] The Court tries to convert this minimal influence into a "conflict of interest," *ante,* at 436, derived from an "impetus to certify [that is] overwhelming," *ante,* at 427, said to arise from a United States Attorney's fear that a Government employee would contest a refusal to certify and force the United States Attorney to litigate the issue. This suggestion will appear plausible or not depending on one's view of the frailty of United States Attorneys. We have to doubt that the Attorney General sees her United States Attorneys as quite so complaisant, and if Congress had thought that the Government's lawyers would certify irresponsibly just to avoid preparing for a hearing it would surely have retained the Drivers Act's provision for review of certification.

has become too attenuated to analogize to the case in which the interested party would protect himself by judging his own cause or otherwise take the law into his own hands in disregard of established legal process. Although the Court quotes at length from the traditional condemnations of self-interested judgments, *ante*, at 428–429, its citations would be on point here only if the employee were issuing the certification. But of course, the employee is not the one who does it, and the Attorney General plainly lacks the kind of self-interest that " 'would certainly bias [her] judgment, and, not improbably, corrupt [her] integrity. . . .' " *Ante*, at 428, quoting The Federalist No. 10, p. 79 (C. Rossiter ed. 1961) (J. Madison).

In any event, even when this presumption is applicable, it is still no more than a presumption, to be given controlling effect only if reference to "specific language or specific legislative history" and "inferences of intent drawn from the statutory scheme as a whole," *Block* v. *Community Nutrition Institute*, 467 U. S. 340, 349 (1984), leave the Court with "substantial doubt" as to Congress's design, *id.*, at 351. There is no substantial doubt here. The presumption has no work to do.

I would affirm.