[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-11012
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 16, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-01705-CV-TCB-1

DEAN SENECA,

Plaintiff-Appellant,

versus

UNITED SOUTH AND EASTERN TRIBES, et al.,

Defendants,

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 16, 2008)**

Before TJOFLAT, BLACK and KRAVITCH, Circuit Judges.

PER CURIAM:

Dean Seneca appeals the district court's order substituting the United States for the named defendants and dismissing his tort claims for failure to exhaust administrative remedies under the Federal Tort Claims Act. For the reasons stated below, we affirm.

## BACKGROUND

Congress has provided for Indian tribes and tribal organizations to enter into agreements with the United States called "Self-Determination Contracts" whereby the tribe or organization takes on responsibility for programs or services to Indian populations that otherwise would have been provided by the Federal government. 25 U.S.C. § 450b(j). The tribe or organization receives Federal funds to help it operate those programs and services.

United South and Eastern Tribes ("USET") is a non-profit organization that represents numerous American Indian tribes collectively. USET entered into a self-determination contract with the U.S. Department of Health and Human Services / Indian Health Service ("HHS/IHS") to assist with health programs. The contract stated that, among other things, USET would provide timely dissemination of health information to the Tribal Health Programs in the Nashville Area, administrative services in coordinating and facilitating the meetings and activities of the Health Committee, and technical assistance to all area tribes with

2

regard to the continuing development of their health programs. This contract also stated that it was to be "liberally construed for the benefit of the Contractor."

In 2006, USET was asked to represent American Indian and Alaskan Native Tribes and testify before HHS's Tribal Budget Consultation Session and the National Divisional Budget Formulation and Consultation Session.

Dean Seneca was employed by the Agency for Toxic Substances and Disease Registry ("ATSDR") as the Assistant Director of the Office of Tribal Affairs. Prior to the budget meetings, Seneca attempted to contact employees at USET through phone calls, emails, and personal encounters to tell them what to include in their testimony. James Martin, then Executive Director of USET, wrote a letter to Seneca's supervisor complaining about Seneca having contacted him and other USET employees inappropriately regarding the testimony. Seneca's supervisor requested additional information and evidence, and USET supplied a second, more detailed letter about Seneca's misconduct. Seneca's job did not, apparently, require him to contact USET about the testimony, and the letter stated that his manner was also inappropriate and aggressive.

As a result of the investigation into these complaints from USET, Seneca was officially reprimanded by his employer, removed from his position at the Office of Tribal Affairs, and reassigned to another division within ATSDR.

Seneca submitted an internal administrative grievance to his employer, the CDC, challenging his reassignment and claiming that the allegations against him in the letters from USET were false. In the grievance, Seneca requested reinstatement to his former position, additional training, and attorneys' fees and costs.

Seneca also filed this tort suit[1] against USET, and three USET employees for making false statements disparaging him. Acting U.S. Attorney Sally Quillian Yates submitted a certification that the named defendants were acting in the scope of their employment as Federal Employees. The certification stated that Ms. Yates had reached this conclusion after reviewing the Indian Self-Determination Agreement between the United States and USET and the declaration of Daretia Hawkins, an attorney for HHS, wherein Ms. Hawkins states her opinion that USET is a tribal contractor entitled to Federal Torts Claims Act ("FTCA") coverage. The U.S. then filed a Notice of Substitution requesting that the United States be substituted as the defendant pursuant to the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679(d). The district court granted the substitution and then dismissed the case for failure to exhaust administrative remedies under the FTCA.

---

[1] Seneca alleged libel, interference with employment, intentional infliction of emotional distress, invasion of privacy, and injury to his peace, happiness and feeling.

4

**DISCUSSION**

When an Indian tribe or tribal organization operates pursuant to a self-determination contract and its employees operate within the scope of their employment in carrying out such a contract or agreement, the organization is considered a part of the Federal government and its employees are considered Federal employees for the purposes of the FTCA. See 25 U.S.C. § 450f. "When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (commonly known as the Westfall Act) empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 419-420 (1995) (quoting 28 U.S.C. § 2679(d)(1)). After certification, the named defendant employee is dismissed from the action and the United States is substituted as the defendant; the case is then governed by the FTCA. Id.

*A. Was the Certification by the U.S. Attorney Sufficient?*

Seneca first challenges the sufficiency of the certification made by the U.S. Attorney. Seneca argues that the certification was inadequate because it failed to specify that the defendants were acting within the scope of their Federal

5

employment *pursuant to* an Indian self-determination contract. We find that this specification was not required, and that the certification was complete.[2]

Under the law, the United States shall be substituted as the defendant "[u]pon certification by the Attorney General[3] that the defendant employee was acting within the scope of his office or employment at the time of the incident our of which the claim arose . . . ." 28 U.S.C. § 2679(d)(1). U.S. Attorney's Yates' certification provided exactly this information. The certification stated "the individual named defendants . . . were acting within the scope of their employment as employees of the Government at the time of the events alleged." This language satisfied the requirements of 28 U.S.C. § 2679(d)(1). We find the appellant's argument that the certification needed to state explicitly that the defendants were acting within the scope of their Federal employment pursuant to an Indian self-determination contract unpersuasive and without authority.

*B. Was the Substitution of the United States as the Defendant Proper?*

"[A]lthough the Attorney General's certification is *prima facie* evidence that the employee acted within the scope of his employment, the district court . . .

---

[2] The Supreme Court has determined that Federal courts may review the U.S. Attorney's scope-of-employment certification. Guiterrez, 515 U.S. at 420; see also Flohr v. Mackovjak, 84 F.3d 386, 390 (11th Cir. 1996).

[3] This responsibility has been delegated to the U.S. Attorneys. See 28 C.F.R. § 15.4.

6

decide[s] the issue <u>de novo</u>." <u>Flohr</u>, 84 F.3d at 390. "However, the burden of altering the status quo by proving that the employee acted outside the scope of employment is on the plaintiff." <u>Id.</u> (internal quotation and alterations omitted). Seneca argues that the named defendants were acting outside the scope of their Federal employment because (i) there is no valid self-determination contract, or, alternatively, (ii) that the defendants were operating outside that agreement at the time of the alleged tortious conduct.

### i.  Was there a valid self-determination contract?

Seneca argues that the named defendants could not have been acting within the scope of Federal employment because there is no valid self-determination contract. Seneca asserts that the self-determination contract was not properly authorized by USET's member tribes. Seneca argued to the district court that the self-determination contract was invalid because the contract itself did not include tribal resolutions approving of the contract. On appeal, Seneca contends that the contract was invalid because the tribal resolutions provided by the defendants as supporting the contract pre-date the self-determination contract and did not refer specifically to the contract USET and HHS entered into in October 2001 that

appellee has presented as the governing self-determination contract.[4]  We review

arguments not before the district court for plain error.  U.S. v. Mock, 523 F.3d

1299, 1302 (11th Cir. 2008).  Because we find that the resolutions do support the

contract, we find no plain error.

For a self-determination contract to be valid, it must be made "upon request

by *any* Indian tribe by tribal resolution," and must be authorized by "*an* Indian

tribe."  25 U.S.C. §§ 450f(a)(1), 450f(a)(2).  It is, therefore, not necessary for each

and every USET member tribe to provide a resolution supporting the self-

determination contract; it is enough if one member tribe did so.  USET provided

numerous resolutions in support of contracts between itself and the U.S.

government.

Although not specifically drafted in reference to the October 2001 self-

determination contract at issue here, these resolutions refer to and authorize

contracts between USET and the U.S. government explicitly for Health

Information Office programs with Indian Health Services of the type at issue here.

These resolutions are not time-restricted nor limited to a single contract, and the

---

[4] Seneca argues on appeal only that the resolutions are outdated and non-specific; he has thus abandoned his argument that the self-determination contract was not supported by a resolution.  See United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998) (arguments not made on appeal are abandoned).

resolutions state that they "continue until rescinded" and request "contracting" with HHS/IHS rather than requesting one specific contract. We find that these resolutions thus support the October 2001 self-determination contract for HHS/IHS Health programs.

> ii.  Were the named defendants acting within the scope of the self-determination contract when Seneca's claims arose?

In this case, we are presented with an employer that operates under dual purposes. The USET operates as a Federal contractor under certain circumstances, but also appears to have separate and distinct responsibilities as a representative of numerous Indian tribes. The question before us is whether, at the time of the events giving rise to this cause of action, the employees named as defendants were acting pursuant to USET's self-determination contract with HHS/IHS or whether they were acting in furtherance of USET's other duties.

The district court found that the named defendants were acting pursuant to the self-determination contract. The district court noted that the contract required USET to "facilitate meaningful consultation between agencies of [HHS] and tribes" and that USET's testimony regarding the health programming needs of the tribal community improved HHS's understanding of that issue. Additionally, the district court noted that the information-gathering and budget formulation

9

regarding which Seneca contacted USET fell under the "administrative functions" necessary to carry out the self-determination contract that were delegated to tribal organizations, 25 U.S.C. § 450f(a)(1). The court then held that, in light of the contract's provision that it be construed liberally for the benefit of USET, USET's employees were acting within the scope of the self-determination contract, and therefore, within the scope of their Federal employment.

"The question of whether a given act falls within the scope of employment is highly fact-specific, and turns on the unique circumstances of the case at bar." Bennett v. United States, 102 F.3d 486, 489 (11th Cir. 1996). This finding of fact is reversible only if "clearly erroneous." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999).

The district court's conclusion that these named defendants were acting pursuant to the self-determination contract between the U.S. government and USET was not clearly erroneous. The testimony spoke to the need for funding for tribes to administer health programs; this knowledge is related to USET's role in administering health programs. Because of the close connection between the topic of the testimony and USET's work for HHS, it was not clearly erroneous to conclude that the preparation of that testimony was within the scope of the employment for HHS.

Furthermore, even if the testimony itself fell outside of the contract, the conduct that actually led to the tort claims—the writing of complaint letters to Seneca's supervisor—falls within scope of the self-determination contract. USET's second letter to Seneca's supervisor stated repeatedly that Seneca's behavior was preventing USET from working cooperatively with ATSDR. Regardless of the context in which Seneca was allegedly harassing USET employees, the named defendants felt a need to complain about Seneca in order to preserve the working relationship with ATSDR—a relationship that exists because of the self-determination contract.

## C. Did Seneca Exhaust His Remedies Under the FTCA?

Seneca also disputes that he failed to exhaust his administrative remedies under the FTCA even if the United States is the proper defendant. We disagree.[5]

A tort claim may not be brought against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). This requirement is

---

[5] We review de novo the district court's dismissal for lack of subject matter jurisdiction. Broward Gardens Tenants Ass'n v. EPA, 311 F.3d 1066, 1072 (11th Cir. 2002).

jurisdictional, and failure to provide this notice prevents judicial review of the claim. Dalrymple v. United States, 460 F.3d 1318, 1324 (11th Cir. 2006).

Seneca asserts that the affidavit he submitted as part of his internal grievance to ATSDR, as his employer, challenging his reassignment served as adequate notice under the FTCA. The affidavit stated that the complaints made against him in USET's letters were false, and Seneca argues that the affidavit thereby satisfies the FTCA notice requirement. This affidavit did not, however, "present" Seneca's tort claims against ATSDR as the employer of USET's employees who had allegedly committed torts against Seneca; Seneca's affidavit did not refer to any of the torts enumerated in his complaint. Instead, the affidavit focused on his displeasure at being reassigned by his employer on the basis of the employer's investigation into complaints about his conduct. The affidavit said nothing about tortious conduct by ATSDR employees, or by the Federal government through vicarious liability, nor mention any intention by Seneca to pursue a tort claim on that basis. This does not satisfy the FTCA notice requirement.

## CONCLUSION

For the foregoing reasons, the district court's substitution of the United States as the defendant and the subsequent dismissal of this case is **AFFIRMED**.

12