Marcus **MILLS**, Plaintiff,

v.

**IOWA BOARD OF REGENTS; State of Iowa; the University of Iowa; James Bryant; the Stolar Partnership, LLP; and Sally Mason and Bonnie Campbell, in their official and individual capacities, Defendants.**

**No. 3:10–cv–112.**

United States District Court, S.D. Iowa, Davenport Division.

March 9, 2011.

Gregory M. Lederer, Lederer Weston Craig PLC, Diane Kutzko, Mark L. Zaiger, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Defendants.

Kelly R. Baier, Bradley & Riley, Cedar Rapids, IA, for Plaintiff.

## ORDER

ROBERT W. PRATT, Chief Judge.

Before the Court are the following motions: 1) "Defendant State of Iowa's Motion to Dismiss Counts II, [VII],[1] and VIII of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1)" (Clerk's No. 5); 2) "Combined Motion to Dismiss of the Iowa Board of Regents pursuant to Federal Rule 12(b)(6) and Partial Motion to Dismiss of the University of Iowa pursuant to Federal Rules 12(b)(1) and 12(b)(6)" (Clerk's No. 6); 3) "Defendant Sally Mason's Motion to Dismiss Counts III and VII pursuant to Federal Rule of Civil Procedure 12(b)(1) and Counts I, II, and VI pursuant to Federal Rule 12(b)(6)" (Clerk's No. 7); and 4) "Defendant Bonnie Campbell's Motion to Dismiss Counts II and III pursuant to Federal Rule 12(b)(1) and Count VI pursuant to Federal Rule 12(b)(6)" (Clerk's No. 8). Marcus Mills ("Plaintiff") filed a resistance to each of the Motions (Clerk's Nos. 13–16), and Defendants replied (Clerk's Nos. 19, 24–26). The Court held a hearing on the pending motions on January 27, 2011. Clerk's No. 28. The matters are fully submitted.

## I. FACTUAL ALLEGATIONS

On August 2, 2010, Plaintiff filed a Petition (hereinafter "Complaint") in the Iowa District Court for Johnson County against the Iowa Board of Regents ("Board of Regents"), the State of Iowa ("State of Iowa" or the "State"), the University of Iowa (the "University"), James Bryant ("Bryant"), the Stolar Partnership, LLP ("Stolar"), Sally Mason ("Mason"), and Bonnie Campbell ("Campbell"). According to Plaintiff's Complaint, Plaintiff was the Vice President of Legal Affairs and General Counsel for the University until September 23, 2008. Compl. ¶ 8. Plaintiff was appointed as General Counsel on August 1, 2005 by then-University President David Skorton ("Skorton"). *Id.* ¶ 9. According to Plaintiff, he accepted the position based, in part, on Skorton's representation that Plaintiff would serve in the position for at least five years. *Id.* Plaintiff received excellent performance reviews and regular pay increases during his term of service with the University. *Id.* ¶ 10.

In October 2007, a female University student ("the victim") alleged that she had been sexually abused by other University students. *Id.* ¶ 11. The University undertook an investigation into the matter. *Id.* ¶ 12. Four University departments—Athletics, Office of Equal Opportunity and Diversity, Student Services, and Public Safety—had direct responsibilities with respect to the investigation. *Id.* ¶ 17. Each department managed its own part of the investigation and was responsible for keeping the University's president, Mason, informed of any actions and findings. *Id.*

---

1. The Motion incorrectly lists Count III rather than Count VII in its caption.

Plaintiff's job duties did not require him to supervise the investigation, and Plaintiff was neither in charge of, nor directed by anyone to take charge of, the investigation. *Id.* ¶¶ 13–15. Rather, Plaintiff represented and provided legal advice to Mason and to other University employees during the investigation, and in so doing, owed ethical duties of confidentiality to those individuals. *Id.* ¶ 16.

On October 24, 2007, Betsy Altmaier ("Altmaier"), the Faculty Athletic Representative to the Big Ten Conference and the NCAA, contacted Mills and asked him to contact the victim's father to explain the University's procedures. *Id.* ¶ 18. Plaintiff contacted the victim's father on the same date, stated his position with the University, and summarized the University's procedures. *Id.* Plaintiff further explained to the victim's father the steps that the University had taken in its investigation thus far, and answered questions. *Id.* Plaintiff explicitly denies telling the victim's father that he would be the family's "liaison with the University." *Id.*

On November 16, 2007, Regent Michael Gartner ("Gartner") sent Mason an email requesting certain information relating to the alleged assault. *Id.* ¶ 19. Gartner wanted the Board of Regents to review the University's policies and procedures regarding the matter, and also wanted a timeline detailing events from October 14 through November 6, 2007. *Id.* Mason forwarded Gartner's request to Senior Vice President and Treasurer Doug True ("True"), Assistance Vice President and Director of Public Safety Charles Green ("Green"), and Plaintiff. *Id.* ¶ 20. Mason later forwarded a second email from Gartner specifying that Gartner did "not want names . . . only process and timeline." *Id.*

On November 21, 2007, a letter dated November 19, 2007 was faxed to University Vice President Phillip Jones and to Green. *Id.* ¶ 21. The letter was not addressed to anyone in particular and contained a typed signature from the "victim and her family." *Id.* Green faxed the letter to Plaintiff and to Director of University Relations Steve Parrot ("Parrot"), and also informed Plaintiff, Parrot, True, Jones, and Mason of the existence of the letter via email. *Id.* ¶ 22. Green stated in his email that the victim's mother was planning to send the letter to the Board of Regents and possibly to the Governor. *Id.* On November 26, 2007, however, Green informed Plaintiff that the victim's father had informed Green that the family would not be sending the letter to additional parties. *Id.* ¶ 23.

Later on November 26, 2007, Board of Regents General Counsel Tom Evans ("Evans"), who was gathering the information sought by Gartner, made an inquiry to Plaintiff about various University policies and procedures and related documents. *Id.* Plaintiff informed Evans of a November 14, 2007 District Court Order which Plaintiff believed precluded him from releasing information about the assault. *Id.* Plaintiff's belief that he was prohibited from releasing the information requested by Evans was reinforced, according to the Complaint, by both consultation with Marcella David, an attorney and Director of the Office of Equal Opportunity and Diversity, and the Attorney General's Office, and by Mason's November 16, 2007 email directing that only process and timeline were to be provided in response to Gartner's information requests. *Id.*

Evans did not ask for any additional information or interview the victim or her family after being informed that Plaintiff would not provide him with specific information relating to the alleged sexual assault and the University's investigation thereof. *Id.* Rather, on June 11, 2008, Evans issued a report to the Board of

Regents stating, among other things, that the University had "fully complied" with internal procedural requirements. *Id.* ¶ 24. On July 19 and 21, 2008, however, letters written by the victim's parents were made public. *Id.* ¶ 25. The letters were highly critical of the University. *Id.*

On July 28, 2008, the Board of Regents hired Stolar to conduct an investigation into the handling of the victim's complaint by the University, its administration, departments, and personnel. *Id.* ¶ 26. Stolar's report, issued September 18, 2008, stated that Plaintiff's responses to the incident were consistent with a culture of a lack of a transparency at the University General Counsel's Office. *Id.* ¶¶ 27–28. The report further stated that Plaintiff contacted the victim's father "out of the blue" and told him Plaintiff was a "liaison for the University" and that "[Plaintiff] would be the [victim's family's] contact for information on the investigation." *Id.* ¶¶ 29, 31. The Stolar report also stated that Plaintiff's "involvement in micromanaging the University's response to the incident presented a serious conflict of interest." *Id.* ¶ 30. On September 23, 2008, Mason fired Plaintiff, based at least in part on the Stolar report. *Id.* ¶ 32. Plaintiff was not provided with notice or a hearing prior to his termination. *Id.* Since his termination, Plaintiff has applied with several employment positions with the University, but has been told that, despite his qualifications, he will not be considered for any employment position with the University. *Id.* ¶ 33.

Plaintiff's Complaint asserts eight claims. Specifically, Count I sets forth a claim for wrongful termination, in violation of 42 U.S.C. § 1983 and the United States Constitution, against the University and Mason. Count II asserts a claim for a § 1983 due process violation against the University and Mason. Count III alleges an Iowa state law claim for false light invasion of privacy and defamation against Mason, Campbell, Bryant and Stolar. Count IV alleges that the University is liable to Plaintiff for breach of contract. Count V asserts a failure to pay wages claim against the University. Count VI sets forth a claim for "violation of liberty interest" against the University, Mason, Campbell, Stolar, and Bryant. Count VII alleges an intentional interference with contract claim against Mason, Campbell, Bryant, Stolar. Finally, Count VIII asserts a claim for "blacklisting" against the University.

## II. STANDARDS OF REVIEW

### A. *Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss an action for lack of subject matter jurisdiction. In order for the Court to dismiss a claim under Federal Rule of Civil Procedure 12(b)(1), the moving party must successfully challenge the claim "on its face or the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Facial challenges, such as in the present case, are limited to analyzing the face of the complaint. *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir.2005). Under a facial challenge, each factual allegation concerning jurisdiction is presumed to be true. *Titus*, 4 F.3d at 593. Thus, the moving party's motion can be "successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id.* Questions of sovereign immunity fall squarely within the province of a 12(b)(1) motion because, if immunity is present for a claim, the Court lacks subject matter jurisdiction over that claim. *See Mumford v. Godfried*, 52 F.3d 756, 758 (8th Cir.1995); *Feltes v. State*, 385 N.W.2d 544, 546–47 (Iowa 1986).

## B. *Federal Rule of Civil Procedure 12(b)(6)*

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In reviewing a complaint, a court must "accept as true all of the factual allegations contained in the complaint," and must draw "all reasonable inferences ... in favor of the plaintiff." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not, however, a 'probability requirement.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

The Supreme Court, in *Ashcroft v. Iqbal*, described a "two-pronged approach" for evaluating complaints challenged under Rule 12(b)(6). *Iqbal*, 129 S.Ct. at 1949–50. First, a court should divide the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregard-ed. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Id.* at 1950.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (citing *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

The "parsing" process requires careful examination of the plaintiff's allegations, however, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. Indeed, "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Id.* at 597 (internal quotations and citations omitted).

A court will "draw on its judicial experience and common sense" when determining whether a complaint states a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1949. Thus, the Court may consider other, more likely explanations for the acts described in the complaint when determining whether the pleaded factual allegations give rise to a plausible entitlement to relief. *Id.* at 1950–51. But, the Court must always be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very

remote and unlikely.'" *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "[W]hile a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, [a court] must also take account of [his or her] limited access to crucial information." *Braden,* 588 F.3d at 597.

## III. LAW AND ANALYSIS

### A. *The Iowa Board of Regents*

Though Plaintiff's Complaint names the Board of Regents as a party in the caption, none of the eight claims asserted in the Complaint allege any wrongdoing by the Board of Regents or seek any relief from the Board of Regents. Thus, the Board of Regents requests that the Court dismiss it from this lawsuit on the basis that Plaintiff has failed to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Clerk's No. 6.

Plaintiff resists the Board of Regents' Motion, arguing: "At this early point in the litigation, without the benefit of discovery, the Board of Regents should not be dismissed from the litigation until [Plaintiff] has had the opportunity to determine the role the Board of Regents played in the termination of his employment and other adverse acts against him." Clerk's No. 15 at 2. More specifically, Plaintiff argues that, because the Board of Regents has overall responsibility for the management of the University and because it may have had at least some responsibility or involvement in Plaintiff's termination, it is premature to dismiss the Board of Regents at this time. *Id.* at 3.

The Court finds that the Board of Regents should be dismissed from this action. *Iqbal* provides, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950. In this situation, the *only* factual allegations in the Complaint regarding the Board of Regents are that it is "division or department of the State of Iowa that governs the University of Iowa," that a member of the Board of Regents requested information from the University, and that the Board of Regents hired Stolar to conduct an investigation. Compl. ¶¶ 3, 19–20, 23, 26. None of these facts give rise to a plausible claim of relief against the Board of Regents.[2]

### B. *Counts One, Two, and Six*

Count I of Plaintiff's Complaint alleges that the University and Mason, in both her official and individual capacities, are liable to Plaintiff for wrongful termination, in violation of 42 U.S.C. § 1983. Similarly, Count II of Plaintiff's Complaint alleges that the University and Mason, in both her official and individual capacities, are liable to Plaintiff under § 1983 for violating Plaintiff's due process rights. Count VI asserts that the University and Mason and Campbell, in both their official and individual capacities, are liable to Plaintiff under § 1983 for violating Plaintiff's liberty interest by denying him a name-clearing hearing.

By its terms, § 1983 only applies to "persons," and it is well settled that state agencies, such as the University, are not "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 63–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Section 1983 provides a federal

**2.** Naturally, should Plaintiff develop, through discovery or otherwise, actual causes of action against the Board of Regents, he may petition for leave to amend his Complaint.

forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Iowa Code § 669.2(5) (providing that the term "state agency" includes "all executive departments, agencies, boards, bureaus, and commissions of the state of Iowa"). Likewise, "an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" *Hafer v. Melo*, 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Will*, 491 U.S. at 71, 109 S.Ct. 2304).

Plaintiff does not dispute that his § 1983 claim in Counts I, II, and VI fail to state a claim against the University. *See* Clerk's No. 15 at 5 ("Mr. Mills does not resist the University of Iowa's Motion to Dismiss it from Counts I, II and VI of the Complaint."). Plaintiff also does not dispute that his § 1983 claims against Mason and Campbell in their official capacities fail to state a claim to the extent they request monetary relief. *See* Clerk's No. 13 at 2 ("Mr. Mills does not resist Defendant Mason's Motion with respect to any claim for monetary damages stated against her in her official capacity in Counts I, II and VI...."); Clerk's No. 14 at 2 ("Mr. Mills does not resist Defendant Campbell's Motion with respect to any claim for monetary damages stated against her in her official capacity in Count VI."). Accordingly, to the extent that Counts I, II and VI seek monetary damages from either Mason or Campbell, such claims are dismissed. Counts I, II, and VI remain pending, however, to the extent they assert claims against Mason or Campbell in their individual capacities, and to the extent they assert claims against Mason or Campbell in their official capacities for injunctive or other prospective relief. *See*

*Will*, 491 U.S. at 71, 109 S.Ct. 2304 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

### C. *Counts Three and Seven*

Count III of Plaintiff's Complaint, entitled "False Light Invasion of Privacy and Defamation," alleges that on September 24, 2008, Mason publicly stated that she was "shocked" to learn of Plaintiff's full role in the University's investigation. Compl. ¶ 50. Mason further expressed that she did not trust Plaintiff, and stated, "To have an individual who was not working for the good of the institution and keeping the big picture in mind is more upsetting than you can imagine." *Id.* On December 16, 2008, Campbell publicly stated that Plaintiff took over the University's investigation, "wound up calling every shot," and "took control of the case." *Id.* ¶ 51. Plaintiff contends that these statements by Mason and Campbell were false, and would reasonably be understood to be expressions that attacked Plaintiff's integrity, injured his reputation, exposed him to public contempt or ridicule, and deprived him of public confidence. Plaintiff further asserts that the public statements by Mason and Campbell are defamatory per se and defamatory per quod. *Id.* ¶ 55.

Count VII of Plaintiff's Complaint, entitled "intentional interference with contract," alleges that Plaintiff had a contract or expectancy of continued employment with the University, and that Mason and Campbell knew of the contract or expectancy, but nonetheless improperly inter-

fered with it, causing Plaintiff's termination. *Id.* ¶¶ 71–74.

Defendants Mason and Campbell both argue that Counts III and VII of Plaintiff's Complaint must be dismissed because Iowa has not waived its sovereign immunity for such claims.

### 1. *Should the State be substituted for Mason & Campbell ?*

"The doctrine of sovereign immunity dictates that a tort claim against the state or an employee acting within the scope of his office or employment with the state must be brought, if at all, pursuant to [the Iowa Tort Claims Act]." *Dickerson v. Mertz*, 547 N.W.2d 208, 213 (Iowa 1996). Mason and Campbell are both "employees of the state," as that term is defined by the Iowa Tort Claims Act ("ITCA"). *See* Iowa Code § 669.2(4) (defining the term as including "one or more officers, agents, or employees of the state of any state agency ... and persons acting on behalf of the state or any state agency in any official capacity...."). Moreover, the Iowa Attorney General has certified that, at the time of the incident and facts alleged in Plaintiff's Complaint, "Campbell was an employee of the State of Iowa acting within the scope of her office as a member of the Iowa Board of Regents," and that "Mason was an employee of the State of Iowa acting within the scope of her office as President of the University of Iowa." Clerk's Nos. 5.1, 5.2. The Attorney General's certification converts the claims against Mason and Campbell into claims against the State of Iowa:

> Upon certification by the attorney general that a defendant in a suit was an employee of the state acting within the scope of the employee's office or employment at the time of the incident upon which the claim is based, the suit commenced upon the claim shall be deemed to be an action against the state under the provisions of this chapter, and if the state is not already a defendant, the state shall be substituted as the defendant in place of the employee.

Iowa Code § 669.5(2)(a).

Despite the clear and mandatory language of § 669.5(2)(a), Plaintiff argues that the Attorney General's certification should be considered only prima facie evidence that Mason and Campbell were acting within the scope of their offices or employment. *See* Clerk's No. 13 at 2–5. Plaintiff encourages the Court to "independently review the facts" to determine whether Mason and Campbell were acting within the scope of their employment at the time of their actions in this case. *Id.* at 3. In support of this proposition, Plaintiff points to a similar provision of the Federal Tort Claims Act ("FTCA") and courts' interpretation thereof.

The FTCA contains the following provision, which is substantially similar to the Attorney General certification provision of § 669.5(2)(a):

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). Unlike the Iowa statute, however, the FTCA goes on to provide another certification provision that is applicable in situations of removal:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or

employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. *This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.*

*Id.* § 2679(d)(2) (emphasis added).

In interpreting these provisions, courts have long held that the presence of the emphasized language in § 2679(d)(2) mandates that certification conclusively establishes scope of office or employment for purposes of removal, but that its absence in § 2679(d)(1) implies that certification does not conclusively establish scope of office or employment for purposes of substitution. *See, e.g., Brown v. Armstrong,* 949 F.2d 1007, 1011 n. 5 (8th Cir.1991) ("Despite the seemingly explicit directive, 'Upon certification ... the United States shall be substituted,' most courts have concluded that the language [of the statute] on balance suggest that Congress did not intend the Attorney General's certification be conclusive on the question of substitution."); *Arbour v. Jenkins,* 903 F.2d 416, 421 (6th Cir.1990) ("[T]he scope certification provisions of the Westfall Act as a whole ... [are] ambiguous regarding the reviewability of the Attorney General's scope certification."). This view was affirmed by the United States Supreme Court in *Gutierrez de Martinez v. Lamagno. See* 515 U.S. 417, 435–36, 115 S.Ct.

2227, 132 L.Ed.2d 375 (1995). Thus, a court confronted with an Attorney General's certification under § 2679(d)(1) must treat the certification as prima facie evidence that the defendant was acting with the scope of his employment, meaning that if the plaintiff "challenges the certification, the district court must independently review the case and determine whether the defendant was in fact acting within the scope of his or her employment." *Anthony v. Runyon,* 76 F.3d 210, 213 (8th Cir. 1996) (citing *Gutierrez,* 515 U.S. at 434, 115 S.Ct. 2227).

Plaintiff urges that this Court should "apply a similar analysis to the ITCA" and independently review the Attorney General's certification. As noted, however, it is the final sentence of the removal provision of § 2679(d)(2) that creates an ambiguity in the framework of the federal statute, leaving it open to judicial interpretation. *See Gutierrez,* 515 U.S. at 434, 115 S.Ct. 2227 ("Because [§ 2679] is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical judgments are not the kind federal courts are set up to render."). No such ambiguity, however, is apparent in the Iowa statute. Accordingly, the Court is "obliged to apply the pertinent statutes as written." *Area Educ. Agency 7 v. Bauch,* 646 N.W.2d 398, 400 (Iowa 2002) ("Only in cases of ambiguity do we resort to the rules of statutory construction.").

The language of Iowa Code § 669.5(2)(b) only bolsters the Court's determination that the Attorney General's certification under § 669.5(2)(a) is conclusive. Section 669.5(2)(b) provides that if the Attorney General refuses to certify that a defendant was acting within the scope of his employ-

ment, "the defendant may petition the court ... to find and certify that the defendant was an employee of the state and was acting within the scope of the defendant's office or employment." This provision makes clear that if the Iowa legislature had intended to provide for judicial review over the Attorney General's certification, it certainly knew how to do so. *See EnviroGas, L.P. v. Cedar Rapids/Linn Cnty. Solid Waste Agency*, 641 N.W.2d 776, 783 (Iowa 2002) (declining to expand the scope of statute where it was "apparent that the legislature knew how [to include the sought-after provisions] had it wanted to do so"); *Moulton v. Iowa Emp't Sec. Comm'n*, 239 Iowa 1161, 34 N.W.2d 211, 216 (1948) (" 'The court is not at liberty to read into the statute provisions which the legislature did not see fit to incorporate, nor may it enlarge the scope of its provisions by an unwarranted interpretation of the language used.' " (citations omitted)).

In this case, § 669.5(2) clearly and unambiguously provides that upon certification by the Attorney General that a defendants were acting within the scope of their employment, "the suit commenced upon the claim shall be deemed to be an action against the state" and the "state shall be substituted as the defendant in place of the employee." *See* Iowa Code § 4.1(30) (stating that "[u]nless otherwise specifically provided by the general assembly," the "word 'shall' imposes a duty"). Accordingly, with respect to Counts III and VII, the State of Iowa is hereby substituted for Defendants Mason and Campbell.

### 2. *Viability of Counts III and VII.*

As a general matter, the ITCA waives the State's sovereign immunity from tort liability, providing that "[t]he state shall be liable [for tort claims] in the same manner, and to the same extent as a private individual under like circumstances." Iowa Code § 669.4. The State, however, has retained its immunity for certain types of torts. These exceptions to the State's waiver of sovereign immunity are recounted in § 669.14, which provides, among other things, that the provisions of the ITCA "shall not apply with respect to any claim against the state, to ... [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel, slander*, misrepresentation, deceit, or *interference with contract rights*." Iowa Code § 669.14(4) (emphasis added); *see also Drahaus v. State*, 584 N.W.2d 270, 272 (Iowa 1998) (stating that a citizen's right to sue "an employee of the state" under the Iowa Tort Claims Act "is limited by conditions set forth by the legislature in chapter 669").

Having converted Plaintiff's claims against Mason and Campbell in Counts III and VII into claims against the State, it is clear that the "defamation" component of Count III and the intentional interference with contract claim in Count VII cannot survive.[3] The emphasized language in § 669.14(4) clearly demonstrates that the State did *not* intend to waive its sovereign immunity for such claims. It is equally apparent that Plaintiff cannot maintain an individual capacity claim against either Mason or Campbell for such claims, as § 669.23 of the ITCA provides that "[e]m-

---

**3.** Plaintiff concedes that if the Attorney General's certification is deemed conclusive, his claim for defamation under Count III and his claim for intentional interference with contract under Count VII are barred. *See* Hr'g Tr. at 19 ("[W]ith respect to [Count] 3, again, only if you choose to dismiss the individual capacity claims remaining, Count 3, defamation would be appropriate to dismiss.... And, Count 7, again, if just deemed against the state, if the individual liability—or individual capacity claims are dismissed, then it would be appropriate to dismiss with respect to the state.").

ployees of the state are not personally liable for any claim which is exempted under section 669.14."

■ With respect to Count III, however, the parties dispute whether the "false light invasion of privacy" component constitutes a claim "arising out of . . . libel [or] slander." Defamation, which includes the twin torts of libel and slander, is the " 'malicious publication, expressed either in printing or in writing [or orally in the case of slander], or by signs and pictures, tending to injure the reputation of another person or to expose [the person] to public hatred, contempt, or ridicule or to injure [the person] in the maintenance of [the person's] business.' " *Vinson v. Linn–Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 115 (Iowa 1985) (quoting *Plendl v. Beuttler*, 253 Iowa 259, 111 N.W.2d 669, 670–71 (Iowa 1961)). False light invasion of privacy, on the other hand, occurs in the following situation:

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

*Kiesau v. Bantz*, 686 N.W.2d 164, 179 (Iowa 2004) (quoting *Winegard v. Larsen*, 260 N.W.2d 816, 823 (Iowa 1977)).

In the present case, Defendants argue that Plaintiff's false light invasion of privacy claim is the "functional equivalent" of a claim for defamation, such that it falls squarely within § 669.14(4)'s exception for claims "arising out of . . . . libel [or] slander." Clerk's No. 5.3 at 8–10. Plaintiff counters:

The Iowa Supreme Court has long recognized the tort of false light invasion of privacy based on Restatement (Second) of Torts § 652E . . . . The wrong inflicted by the tort of false light invasion of privacy is a violation of the interest of the plaintiff in not being made to appear before the public in an objectionable false light. The plaintiff need not be defamed. . . . Because the tort of false light invasion of privacy constitutes a "wrong inflicted" different from the "wrong inflicted" that is addressed through defamation claims, the two torts are not functionally equivalent, and Iowa Code § 669.14(4) does not exempt the tort of false claim of invasion of privacy from the State's waiver of its sovereign immunity.

Clerk's No. 16 at 4.

The Iowa Supreme Court has stated that § 669.14 "identifies excluded claims in terms of the type of wrong inflicted." *Greene v. Friend of Court*, 406 N.W.2d 433, 436 (Iowa 1987). Thus, when "[t]he gravamen of plaintiff's claim . . . is the functional equivalent of" of one of the causes of action listed in § 669.14(4), the claim cannot be pursued against the State of Iowa. *Id.; see also Hawkeye By–Products, Inc. v. State*, 419 N.W.2d 410, 412 (Iowa 1988) ("[T]he legislature intended to preclude all claims based on the type of conduct described in the exclusionary language."). It is notable that the exceptions to the ITCA found in § 669.14(4) are identical to the exceptions to the FTCA found in 28 U.S.C. § 2680(h) (exempting from the FTCA "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights"). This fact is significant because Iowa courts "turn to federal law in construing chapter 669 'because our statute is modeled after

the Federal Tort Claims Act.'" *Blacketer v. State, Div. of Narcotics Enforcement,* No. 07–0561, ─── Fed.Appx. ───, ───, 2007 WL 4191979, at *3 (Iowa Ct.App. Nov. 29, 2007) (relying in part on federal interpretations of the FTCA in concluding that a plaintiff's claim for excessive force was the functional equivalent of a claim for assault and battery barred by § 669.14(4)) (quoting *Hyde v. Buckalew,* 393 N.W.2d 800, 802 (Iowa 1986)); *see also Feltes,* 385 N.W.2d at 547 ("Because the [ITCA] is modeled after the [FTCA], we have found that the legislature intended the Iowa Act to have the same effect as the FTCA. Thus, we have given great weight to relevant federal decisions.").

Federal law consistently holds that claims for false light invasion of privacy are barred by the libel and slander exception to the FTCA in 28 U.S.C. § 2680(h). *See Popovic v. United States,* No. 98–1432, 175 F.3d 1015, 1999 WL 228243, at *5 (4th Cir.1999) ("As the statute and Supreme Court precedent make clear, not only are torts such as defamation not actionable, but claims 'arising from' those torts are not actionable. Since Popovic's claims rely on defamatory acts, his invasion of privacy claims at best arise out of the excluded tort of defamation. As a result, they are not cognizable either."); *Johnson v. Sawyer,* 47 F.3d 716, 732 n. 34 (5th Cir.1995)

("As the district court correctly recognized, 'false light' invasion of privacy essentially amounts to libel, slander, or misrepresentation."); *Hobdy v. United States,* No. 91–3204, 968 F.2d 20, 1992 WL 149871, at *3 (10th Cir. June 26, 1992) ("[A]n invasion of privacy claim founded on allegedly defamatory statements is barred by § 2680(h)."); *Thomas–Lazear v. F.B.I.,* 851 F.2d 1202, 1206 (9th Cir.1988) ("The district court found … that the essence of the [invasion of privacy] claim is the spreading of slanderous statements and that it is thus barred by section 2680(h). We agree."); *Metz v. United States,* 788 F.2d 1528, 1535 (11th Cir.1986) (finding that where allegedly slanderous statements were essential to the plaintiff's action for false light invasion of privacy, the claims "arise out of" slander and are not actionable under the FTCA).

■ In the instant case, Plaintiff's cause of action for false light invasion of privacy is founded on precisely those allegedly false statements by Mason and Campbell that form the basis for his defamation claims. The Court believes that in this situation, the Iowa Supreme Court would follow federal case law on the issue and find that Plaintiff's false light invasion of privacy claim "arises" out of a claim for defamation, such that it is barred by § 669.14(4).[4] This conclusion is bolstered

---

4. In 2003, the Eighth Circuit determined that an invasion of privacy claim founded on government surveillance was not barred by the FTCA. *See Raz v. United States,* 343 F.3d 945, 947–48 (8th Cir.2003). Citing several cases from other jurisdictions, the Eighth Circuit stated, without further explication: "While we agree that Raz may not proceed under the FTCA on a claim for slander, he appears to assert other tort claims that do not fall within the intentional-torts exception to the FTCA's waiver of sovereign immunity." *Id.* at 948. *Raz* is distinguishable, however, because the invasion of privacy claim therein was not founded on the dissemination of statements that would subject the plaintiff to public con-

tempt or ridicule; rather it was founded on a claim that intrusive governmental *acts* directly invaded Raz's privacy. *Id.; see Klugel v. Small,* 519 F.Supp.2d 66, 76 (D.D.C.2007) (permitting invasion of privacy claim to proceed under the FTCA where the evidence supporting the plaintiff's defamation claim differed from the evidence supporting her invasion of privacy claim, namely in that the invasion of privacy claim was not premised upon any "dissemination" of information). The Court acknowledges that there may be some situations where a false light invasion of privacy claim can survive a challenge under § 669.14(4), but believes that the facts

by the fact that Iowa courts do not permit a plaintiff to recover on both a defamation theory and on a false light invasion of privacy theory. *See Bradbery v. Dubuque County*, No. 99–1881, 2001 WL 23144, at *4 (Iowa Ct.App. Jan. 10, 2001) (noting that a plaintiff "may recover under either defamation or false light but not both causes of action"); *see also Berry v. Nat'l Broad. Co., Inc.*, 480 F.2d 428, 431 (8th Cir.1973) (quoting the Restatement (Second) of Torts for the proposition that a plaintiff "may lay his action in two theories, but will be limited to only one recovery," because it is "unreasonable that limitations on recovery for defamation can be evaded by suing on another theory for the same publication of the same defamatory matter"). For these reasons, the Court finds that Plaintiff's false light invasion of privacy claim "aris[es] out of libel, slander [or] misrepresentation" such that it is not cognizable under the ITCA in light of the exemption in § 669.14(4).

### D. *Count Eight*

Defendants proffer several reasons why Plaintiff's blacklisting claim against the University cannot succeed. First, Defendants argue that Plaintiff has failed to state a claim under Iowa's blacklisting statute, Iowa Code § 730.2. *See* Clerk's No. 6.1. Defendants further argue that the State has not waived its sovereign immunity for a claim under § 730.2. Clerk's No. 5.3 at 12. Plaintiff, however, has expressly disclaimed reliance on § 730.2 as the basis for his claim. *See* Clerk's No. 15 at 4 ("The claim for person-

al injury that Mr. Mills has stated in Count VIII is not based on Iowa Code § 730.2.").

Defendants next argue that the Court lacks subject matter jurisdiction over Count VIII because it alleges a "claim" that must be dismissed under the ITCA. Iowa Code § 669.2(3)(a) defines a "claim" as:

> Any claim against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death.

Given that Plaintiff's blacklisting claims seeks "treble damages" and other monetary relief, it qualifies as a claim under the ITCA. Thus, because the "claim" is asserted against the University, a state agency,[5] rather than the State, it is technically improperly filed and dismissal is appropriate. *See* Iowa Code § 669.16 ("[T]he authority of any state agency to sue or be sued in its own name shall not be construed to authorize suits against such state agency on claims as defined in this chapter. The remedies provided by this chapter in such cases shall be exclusive."); *Jones v. Iowa State Highway Comm'n*, 207 N.W.2d 1, 2 (Iowa 1973) (stating that the ITCA "requires actions under the State Tort Claims Act to be brought against the state, not the agency or officer alleged to have been

---

underlying the claim must be evaluated to determine whether the actions giving rise to the claim are of the type for which the Iowa legislature intended to preserve immunity.

**5.** The University of Iowa is a "state agency" within the meaning of the ITCA. Iowa Code § 669.2(5) (" 'State agency' includes all exec-

utive departments, agencies, boards, bureaus, and commissions of the state of Iowa."); *see Jain v. State*, 617 N.W.2d 293, 296 (Iowa 2000) (discussing action brought against the University of Iowa as having been brought against the University "in accordance with the 'state agency' provisions of" of § 669.2).

guilty of the wrongful conduct"). Nonetheless, since the State is named as a Defendant in the case (though not in Count VIII), the Court will, for purposes of further analysis only, treat the claim as if it were properly filed against the State.

According to Defendants, Plaintiff's blacklisting claim must be dismissed because it is really a claim "arising out of . . . interference with contract rights" that is barred by the exceptions to the State's waiver of immunity in Iowa Code § 669.14(4). Plaintiff vehemently resists the implication that his blacklisting claim arises out of "interference with contract rights," arguing instead that it is actually a "claim for injury to his career and reputation." Clerk's No. 16 at 5. According to Plaintiff:

> It is well recognized that governmental employers have a duty to not make statements in connection with the termination of an employee's employment damaging to the employee's good name without providing the employee with a due process hearing at which the employee is given an opportunity to rebut the allegations and clear his name. *See Gibson v. Caruthersville School District,* 336 F.3d 768, 772 (8th Cir.2003) (citations omitted). The State and its agencies breached this duty by not providing Mr. Mills with a hearing in which he could rebut the allegations against him and clear his name. This breach of duty has stigmatized Mr. Mills by seriously damaging his standing and reputation among his peers and among members of the community. The University has compounded this damage by refusing to consider Mr. Mills for employment positions with the University even though he has applied for, and been well qualified for, several open positions. This claim by Mr. Mills for personal injury is not exempted as a claim for interference with contract rights from the State's

waiver of sovereign immunity by Iowa Code § 669.14(4) and the Motion to Dismiss for lack of subject matter jurisdiction should be denied.

Clerk's No. 16 at 5–6.

■ Regardless of Plaintiff's contentions, Count VIII, *as pled,* cannot reasonably be read as claiming a right to a name-clearing hearing to alleviate damages to his career and reputation. The *only* references in the Complaint to a name-clearing hearing are in paragraph 69 of the Complaint and in the prayer for relief immediately following paragraph 69, both of which form a part of the now-dismissed Count VI claim for violation of liberty interest. *See* Compl. ¶ 69 ("Defendants denied Mills the right to a name-clearing hearing."); *id.* Count VI Prayer ("Mills requests the Court . . . require the University of Iowa to provide an opportunity to Mills to clear his name . . . ."). Count VIII, however, *only* incorporates by reference paragraphs 1–33 of the Complaint, none of which discuss or even hint at Plaintiff's claimed entitlement to a name-clearing hearing. Indeed, Count VIII, in its entirety, reads:

76. Mills restates paragraphs 1 through 33 of the Petition.

77. The University terminated the employment of Mills.

78. Following the termination of Mills' employment, the University by word, writing, or other means, prevented or attempted to prevent Mills from obtaining employment.

79. The University acted with the predominant purpose of preventing Mills from obtaining future employment.

80. The University's conduct was a proximate cause of damage to Mills.

WHEREFORE, Mills requests the Court enter judgment in his favor, award treble damages, award costs, and for such other and further relief as the Court deems appropriate.

Compl. at 13–14. Thus, reading the allegations of Count VIII, the Court agrees with Defendants that Count VIII, as it is pled, seeks relief for a claim the gravamen of which is the functional equivalent of an interference with contract claim. *See North v. State,* 400 N.W.2d 566, 569–70 (Iowa 1987) (finding that the § 669.4(4) exception for claims arising out of interference with contract rights includes claims of tortious interference with contract and tortious interference with business advantage).

■ Even, however, were the Court to accept Plaintiff's proposition that Count VIII really seeks to state a claim that the University breached its duty to avoid harm to Plaintiff's good name by failing to provide him with an opportunity to rebut the allegations against him in a name-clearing hearing, the Court would still have to dismiss the claim at this time. An " 'employee is entitled to procedural due process only when he has been deprived of a constitutionally protected ... liberty interest.' " *Rush v. Perryman,* 579 F.3d 908, 912 (8th Cir.2009). Assuming that such entitlement to due process exists in this case, it is possible that Plaintiff suffered such a deprivation when he was "not given an opportunity to clear his [ ] name." *Id.; see also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To establish such a claim, however, Plaintiff will be required to demonstrate that he: 1) was stigmatized or seriously damaged by the reasons given for his discharge; 2) that his employer made those reasons public; 3) that he denied the charges against him; and 4) that he requested a name-clearing

hearing prior to commencing litigation. *See id.* at 913, 92 S.Ct. 2701; *Winskowski v. City of Stephen,* 442 F.3d 1107, 1112 (8th Cir.2006); *Hammer v. City of Osage Beach,* 318 F.3d 832, 839–40 (8th Cir.2003). Plaintiff has not, however, pled all of these elements in Count VIII. *See* Fed.R.Civ.P. 8(a)(2) (requiring a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). Moreover, it is worthy of noting again that Plaintiff's claim in Count VIII is brought solely against the University. While the Court will not opine as to the legal mechanisms by which Plaintiff may properly assert the claim he seeks to bring in Count VIII, it is clear that should he amend the Complaint to allege Count VIII as a § 1983 claim, the Court would lack jurisdiction over it for the same reasons the Court lacked jurisdiction over Counts I, II and VI, discussed *supra.*

## IV. CONCLUSION

For the reasons stated herein, the pending Motions to Dismiss (Clerk's Nos. 5, 6, 7, 8) are GRANTED, without prejudice, to the extent articulated in this Order. Specifically, the Board of Regents is dismissed. Counts I and II are dismissed, except to the extent they assert individual capacity claims against Mason or official capacity claims against Mason for prospective relief. Count III is dismissed in its entirety. Counts IV and V remain pending as they were not the subject of the Motions to Dismiss. Count VI is dismissed, except to the extent it asserts individual capacity claims against Mason and Campbell. or official capacity claims against Mason and Campbell for prospective relief. Counts VII and VIII are dismissed in their entirety.

IT IS SO ORDERED.