MANSFIELD, Justice
(dissenting).
I respectfully dissent. The majority’s understanding of the Iowa Tort Claims Act is not what the plaintiff argued, is contrary to the language of the statute, and is unworkable as a practical matter. If we consider the argument that Christopher Godfrey actually made, both here and below, I think the district court made the right decision, and I would affirm.
I. The Majority’s Reading of the Iowa Tort Claims Act.
Let me begin with the majority’s reading of the Iowa Tort Claims Act (ITCA). According to the majority, a plaintiff who brings an action against state employees need only add to the case caption that each employee is being named “individually and in his [or her] official capacity.” This small insertion then becomes a way for the plaintiff to have all the benefits of the ITCA while avoiding its adverse consequences.
Having used the “individual and official” language in the case caption, the plaintiff gets the ball rolling by submitting the entire dispute to the state appeal board, as the plaintiff did here. See Iowa Code § 669.3(2)-(3) (2011) (instructing a plaintiff to file a claim with the director of the department of management and granting state appeal board authority over claims). Assuming the board rejects the claim or doesn’t act, the plaintiff can go to court, as the plaintiff did here. See id. § 669.5(1).
Next up is certification. If the attorney general certifies the defendants were state employees acting within the scope of their office or employment, the plaintiff gets the best of both worlds. As to any tort claims that are allowed under the ITCA, the employees are conclusively deemed to have acted within the scope of employment, the State is substituted as a defendant, and the State is bound by the employees’ actions and has to pay the bill for them. See id. §§ 669.5(2)(a), .21. On the other hand, with respect to tort claims that are not allowed under the ITCA because the State hasn’t waived sovereign immunity, the plaintiff can freely argue the inconsistent position that the state employees were not acting within the scope of their office or employment. Furthermore, the plaintiff can take this inconsistent position without any repercussion, because the State is irrevocably on the hook for the covered claims. See id.
Now, one might say that a shrewd attorney general could refuse to make a certification, thereby keeping his or her options open. But this won’t happen because, in that event, the defendants would file petitions asking the court to find they were acting within the scope of their employment. See id. § 669.5(2)(6). And assuming the court grants the petitions, the plaintiff would again have the best of both worlds. He or she would be able to argue the defendants were not acting within the scope of their office or employment with respect to uncovered tort claims, while benefiting from a prior conclusive determination that with respect to covered tort claims they were acting within the scope of their office or employment.
I disagree that the ITCA establishes such a no-lose proposition for the plaintiff, so long as the plaintiff is astute enough to include six words in the case caption— “individually and in his [or her] official capacity.”
While the majority’s position is a no-lose for the plaintiff, it is a lose-lose for the defendants. Instead of getting an early determination one way or the other that *592 their liability will or will not be covered by the State, state employees are left hanging until trial or summary judgment with respect to the uncovered claims. Until the jury renders a verdict, if there is any issue of fact, they won’t know if they are going to have to pay damages out of their own pockets.
II. How the ITCA Actually Works: The Plaintiffs Two Options.
In my view, this is wrong. I believe the law is straightforward and works like this: A plaintiff who believes he or she has been wronged by a state employee acting outside- the scope of employment always has the option of bringing a stand-alone lawsuit against that employee without going through the ITCA presuit notice procedures. In that event, the burden shifts to the defendant to show he or she acted within the scope of employment and therefore the claim or claims are covered by the ITCA. See, e.g., Thomas v. Gavin, 838 N.W.2d 518, 519-20 (Iowa 2013); see also Iowa Code § 669.2(3) — (4) (defining “claim” covered by the ITCA and “employee of the state”).[6]
On the other hand, should the plaintiff choose to follow the ITCA presuit notice procedures and then file suit based upon that notice, the plaintiff becomes subject to the attorney general’s certification with respect to the entire suit.
The statute in my view compels this interpretation by making it quite clear that certification applies to “suit[s],” not individual causes of action. See Iowa Code § 669.5. Thus, the ITCA first requires a “claim made under” the Act to be filed with the department of management. See id. § 669.3(2). Once the appeal board acts on the claim, or in the event the board fails to act within six months, the plaintiff may bring a “suit” for the “claim.” See id. § 669.5(1). This triggers the attorney general’s certification power. See id. § 669.5(2)(a). The attorney general can then certify that a defendant in the “suit” was a state employee acting within the scope of the employee’s office or employment at the time of the incident upon which the claim is based. See id. If that occurs, “the suit” shall be deemed to be an action against the State, and the State shall be substituted as the defendant in place of the employee. See id. Let me quote the entire language of the subsection:
Upon certification by the attorney general that a defendant in a suit was an employee of the state acting within the scope of the employee’s office or employment at the time of the incident upon which the claim is based, the suit commenced upon the claim shall be deemed to be an action against the state under the provisions of this chapter, and if the state is not already a defendant, the state shall be substituted as the defendant in place of the employee.

Id.

In short, the certification process operates on “the suit,” not merely part of it, as *593 the majority concludes. See id. Certification results in the state employee ceasing to be “a defendant,” rather than just removing that employee from some parts of the case, as the majority would have it. See id.[7]
III. Applying Those Principles Here.
Here, Godfrey filed a petition naming the State and six state employees, including the Governor and Lieutenant Governor, as defendants. The body of the petition alleged various acts and causes of action, but did not indicate whether or not the defendants were acting within the scope of their office or employment when they committed those acts. As noted above, the caption listed each defendant followed by the words, “Individually and in His [or Her] Official Capacity.”
Before bringing this petition in court, Godfrey submitted it in its entirety to the state appeal board. The amended petition actually says this. It recites, “On January 9, 2012, within two years of the acts of which he complains, Plaintiff filed with the State Appeals Board a State Tort Claims Act claims for the damages herein sought against the above-named state DEFENDANTS and the State of IOWA.” The transcript of the- appellate oral argument also confirms that Godfrey previously submitted everything to the state appeal board.[8]
For these reasons, I believe that the attorney general’s certification affects the entire suit except for the civil rights claims. It results in the state employees no longer being defendants to any tort claims, exactly as section 669.5(2)(u) provides. And Godfrey has not heretofore disputed that point. Instead, his position in the district court and this court was that the attorney general’s certification was not conclusive and could be judicially reviewed. For example, his application for interlocutory review asserted as follows:
Plaintiff respectfully requests that the Court grant interlocutory review of the District Court’s ruling and find that an attorney general’s certification in accordance with Iowa Code Chapter 669 is not conclusive as to whether the state defendants were acting within the scope of their employment for purposes of Plaintiffs claims and that judicial review of such certification is necessary and proper in the first instance, with the matter submitted as a question of fact for resolution by the jury.[9]
*594 IV. Is the Attorney General’s Certification Reviewable?
I now turn to the question that Godfrey actually argued — i.e., whether the attorney general’s certification is judicially reviewable. Here I would follow the well-reasoned opinion of the United States District Court for the Southern District of Iowa. See Mills v. Iowa Bd. of Regents, 770 F.Supp.2d 986 (S.D.Iowa 2011). As that opinion demonstrates, the Iowa legislature intended to give final effect to the attorney general’s certifications under the ITCA that state employees were acting in the scope of their employment. See id. at 994-96.
This system in no way works unfairness on plaintiffs. As I have already noted, a plaintiff always has the option of suing a state employee outside the ITCA on an allegation that the employee was not acting in the scope of state employment. This puts the employee in the position of having to prove to the satisfaction of an Iowa district court that the employee was acting in the scope of state employment. Godfrey here chose not to exercise that option.
On the other hand, if the plaintiff, as here, proceeds under the ITCA, then the certification process comes into play. Note again the wording of section 669.5(2)(a). When the attorney general certifies that a defendant was a state employee acting within the scope of state employment, the suit “shall” be deemed to be an action against the State under the provisions of this chapter. Iowa Code § 669.5(2)(a). The employee is removed from the case, and the State “shall” be substituted. Id.
This evenhanded system has benefits for the plaintiff. The plaintiff knows once and for all that a defendant with billions of dollars in assets, i.e., the State, will pay the bill if he or she prevails. Following certification, the plaintiff no longer has to worry about proving that a particular defendant acted in the scope of employment. The system also has benefits for the employee. The employee is removed from the lawsuit as an individual defendant and is not subject to liability. And it has benefits for the State. Certain kinds of claims — e.g., some but not all of the claims in this case — cannot be pursued.
Under section 669.5(2)(&), as I’ve already mentioned, if the attorney general refuses to make a certification that a state employee was acting within the scope of his or her employment, the defendant may “petition the court ... for the court to find and certify that the defendant was an employee of the state and was acting within the scope of the defendant’s office or employment.” Id. § 669.5(2)(6). However, there is no provision allowing the plaintiff to petition the court for review of the attorney general’s certification. As the Mills court pointed out, the existence of a provision within section 669.5 allowing judicial review at the request of the defendant only is a powerful indicator that the legislature did not intend to allow judicial *595 review of a certification at the plaintiffs request. 770 F.Supp.2d at 995-96 (“This provision makes clear that if the Iowa legislature had intended to provide for judicial review over the Attorney General’s certification, it certainly knew how to do so.”); see also Chiodo v. Section ⅛3.2⅛ Panel, 846 N.W.2d 845, 858-59, 2014 WL 1464786 (Iowa 2014) (plurality opinion) (applying this principle).
On first glance, that might seem unfair to the plaintiff. The defendant can get judicial review but the plaintiff cannot. But on a more thorough consideration, it isn’t. Again, if the plaintiff believes the individual defendant was not acting in the scope of state employment, the plaintiff can always file a garden-variety lawsuit against that defendant in state court. That lawsuit will go forward against the individual defendant, unless the defendant in some way asserts the ITCA is applicable. The defendant’s contention that the ITCA applies would then be ruled upon by the court. See, e.g., Thomas, 838 N.W.2d at 519-20; cf. Minor v. State, 819 N.W.2d 383, 405 (Iowa 2012) (finding that a claim against a department of human services employee was barred for failure to exhaust administrative remedies under the ITCA, even though the employee was sued individually).
In other words, a plaintiff who believes the defendant was not acting within the scope of his or her state employment can always get a judicial determination of that issue. The plaintiff simply has to sue that defendant in his or her individual capacity in state court without going through the ITCA. Yet the news for the plaintiff gets even better. Under our recent decision in Rivera v. Woodward Resource Center, even if the plaintiff guesses wrong and a judge later determines the defendant was acting within the scope of state employment, the plaintiffs deadline for filing a claim with the director of management under the ITCA is extended. See 830 N.W.2d 724, 725-26 (Iowa 2013).
So what Godfrey really wanted here was a second mechanism for judicial review, one not provided by Iowa law. I would deny that effort. I think section 669.5 is very clear. If the attorney general makes the certification, the action “shall” be deemed against the State and the State “shall” be substituted. Iowa Code § 669.5(2)(a). A denial of certification is reviewable at the request of the employee, but there is no provision for review of a certification.
Y. The Federal Precedents Under the Westfall Act.
Godfrey argues that we should follow the United States Supreme Court’s interpretation of the Westfall Act, 28 U.S.C. § 2679(d)(1) (2012), which is part of the federal tort claims system. He cites Walker v. State for that proposition. 801 N.W.2d 548 (Iowa 2011). Yet- in Walker, although we were interpreting a provision of the ITCA that had the same wording as the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-80, we did not follow the Supreme Court’s interpretation. See 801 N.W.2d at 565-66. Instead, we followed a separate opinion written by Justice Scalia concurring in the judgment only. See id. (noting that “Justice Scalia wrote separately to voice his disagreement with the analysis employed by the majority” and concluding “our analyses] in our prior discretionary function cases [is] more in line with Justice Scalia’s analysis”). In short, Walker was a case where we did not track the majority views of the United States Supreme Court in interpreting Iowa’s own tort claims act.
In any event, what we have said is that we are guided by interpretations of the FTCA “when the wording of the two Acts *596 is identical or similar.” Thomas, 838 N.W.2d at 525. In Thomas and Walker it was. Id.; Walker, 801 N.W.2d at 565-66. Here it is not.
The Westfall Act, unlike the ITCA, has separate language providing that the attorney general’s certification is “conclusive” in only one circumstance — namely removal. It reads in relevant part as follows:
(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
(2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.
(8) In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
28 U.S.C. § 2679(d) (emphasis added).
Thus, by specifically stating that certification is conclusive in the context of removal, the Westfall Act allows for an inference that the attorney general’s certification is not conclusive in situations other than removal. The ITCA contains no comparable language. The presence of the “conclusively” language was critical to the Supreme Court’s decision in Gutierrez de Martinez v. Lamagno. See 515 U.S. 417, 438-34, 115 S.Ct. 2227, 2235-36, 132 L.Ed.2d 375, 388-90 (1995). That language made the statute “reasonably susceptible to divergent interpretation” and thus allowed the Court to follow the interpretive principle “that executive determinations generally are subject to judicial review.” Id. at 434, 115 S.Ct. at 2236, 132 L.Ed.2d at 390.
Notably, four justices dissented in Lam-agno and said that “a plain reading of the text” did not allow for judicial review of the attorney general’s certification that the defendant was acting within the scope of his or her federal employment. Id. at 439-40, 115 S.Ct. at 2238-39, 132 L.Ed.2d at 392-94 (Souter, J., dissenting). But for present purposes, as the district court emphasized in Mills, we need only focus on the relevant differences between the ITCA and federal law as revealed by the majority opinion in Lamagno. Mills, 770 *597 F.Supp.2d at 994-95. As the Mills court put it, “[I]t is the final sentence of the removal provision of § 2679(d)(2) that creates an ambiguity in the framework of the federal statute, leaving it open to judicial interpretation.” Id. at 995 (citing Lamagno, 515 U.S. at 434, 115 S.Ct. at 2286, 132 L.Ed.2d at 390). And that final sentence is not present in the ITCA.
Furthermore, if you think about it, the different outcome in Lamagno makes sense. Suppose the federal judge who wrote Mills and I got into a public spat and said bad things about each other. (That would never happen, but let’s assume it did for hypothetical purposes.) If he sued me for defamation in my personal capacity, I would have to defend the case personally or persuade a court that I was acting in the scope of my employment. On the other hand, if I sued him for defamation in his personal capacity, the United States Attorney General could unilaterally remove the case to federal court under Title 28 of the United States Code section 2679(d)(2). Then, but for Lamagno, the Attorney General could certify that this federal judge was acting in the scope of employment, thereby depriving me of my cause of action because, under both the ITCA and the FTCA, defamation claims are not available. In short, judicial review of certification is needed to plug a potential reviewability hole in the federal system, but not in the state system.[10]
The facts of Lamagno illustrate this point. Late at night, in Colombia, South America, a car driven by an allegedly intoxicated drug enforcement agent ran into the plaintiffs vehicle. 515 U.S. at 420-21, 115 S.Ct. at 2229, 132 L.Ed.2d at 381. The plaintiff sued the agent in the United States and maintained the agent had been acting in his personal capacity. The Attorney General, however, certified the agent had been acting in the scope of his employment when driving the vehicle. Id. at 421, 115 S.Ct. at 2230, 132 L.Ed.2d at 382. At that point, the lawsuit ended, because the FTCA does not allow claims that arose in a foreign country, until the United States Supreme Court reversed and found the Attorney General’s certification reviewable. Id. at 422-23, 115 S.Ct. at 2230-31, 132 L.Ed.2d at 383.
That situation could not arise under the ITCA. Under the ITCA, if the defendant is sued in his or her personal capacity outside the framework of the ITCA, the case goes forward unless and until a court rules that the defendant was acting in the scope of state employment.
Still, Lamagno leads me to two additional observations regarding the majority opinion. First of all, if the majority is right, then the entire United States Supreme Court missed the boat in Lamagno. In a case where the plaintiff maintained the defendant had not been acting in the scope of his government employment, the Justices devoted many pages to debating a *598 single fighting issue — i.e., whether the Attorney General’s certification could be judicially reviewed or not. My colleagues indicate that this was wasted effort. So long as the complaint contained some allegation that the defendant was also being sued individually, the certification would have no impact. I think this would be a revelation for the Justices of the United States Supreme Court. To the contrary, the Westfall Act allows the Attorney General to issue a certification whether or not the employee has been sued in his individual capacity. See, e.g., Winters v. Taylor, 333 Fed.Appx. 113, 116 (7th Cir.2009) (“The Westfall Act, 28 U.S.C. § 2679, allows a federal employee sued in an individual capacity to convert the action to one against the United States, thereby obtaining indirectly the benefit of the United States’ sovereign immunity.”).
The majority suggests the ITCA should be interpreted differently because “the first sentence of section 669.5 makes it clear the provisions of section 669.5 only apply to suits brought under the Iowa Tort Claims Act.” But as I have already explained, this is a suit under the ITCA. It contains “a claim under [chapter 669].” See Iowa Code § 669.5(l).[11]
My second observation is that although the Lamagno decision went against the government, it protects government employees in an important, practical way. It does so by assuring the attorney general’s certification, if challenged by the plaintiff, will be reviewed by “the District Court.” Lamagno, 515 U.S. at 436-37, 115 S.Ct. at 2237, 132 L.Ed.2d at 391. By contrast, as I have already noted, the majority’s approach here simply renders the certification irrelevant and leaves the state employee dangling until trial or at best summary judgment, unable to ascertain whether he or she will or will not have personal liability. This seems to undermine one purpose of the ITCA, which is to encourage people to work for the government by providing safeguards if they are sued. Those safeguards mean little if the plaintiff can simply circumvent them by adding a few words in the caption of a lawsuit.[12]
YI. Defense Costs.
I now turn to the subject of defense costs. Here we come to another flaw in the majority’s opinion.
The majority says that the attorney general’s certification authority only extends to claims as defined in section 669.2(3)(6). Such claims, in the majority’s view, cannot include claims where the state employee is alleged to have acted in his or her individual capacity. Thus, for certification pur *599 poses, according to the majority, we go claim by claim and the allegations control.
However, when my colleagues get to the subject of defense costs, their reading of the statute changes. My colleagues say the State has a duty to defend the state employee if “a question exists” as to whether he or she was acting in the scope of employment, even if the plaintiff alleges the state employee was not acting in the scope of employment.[13]
How can this be? How can the certification authority be narrower than the authority to provide a defense? Iowa Code sections 669.21 and 669.5 incorporate the same definition of claim from Iowa Code section 669.2(3)(b). Thus, section 669.21, which the majority cites but does not quote, provides that the State “shall defend any employee, and shall indemnify and hold harmless an employee against any claim as defined in section 669.2, subsection 3, paragraph ‘b.’ ” Iowa Code § 669.21.
I submit: Either you can go behind the allegations of individual capacity or you cannot. The majority cannot interpret the same statute — section 669.2(3)(6) — two different ways in the same opinion.
The majority justifies this contradiction by citing a private insurance case for the proposition that “[t]he duty to defend is broader than the duty to indemnify.” First Newton Nat’l Bank v. Gen. Cas. Co. of Wis., 426 N.W.2d 618, 630 (Iowa 1988). I do not follow the majority’s reasoning. In First Newton National Bank, we held as a matter of insurance law that when a lawsuit includes covered and uncovered claims, the insurer has a duty to defend the entire lawsuit. Id. That case does not apply here because we are interpreting statutes and do not get to write the law ourselves. The legislature has defined the duty to defend and indemnify in section 669.21 based on the definition of claim in section 669.2(3)(6). We are constrained by those definitions. Either the statutory definition of claim allows the attorney general to look past the bare allegations to the underlying facts, or it doesn’t. Chapter 669 will not support an interpretation that the attorney general gets to look beyond the bare allegations for defense and indemnification purposes but not for certification purposes.
In any event, First Newton National Bank does not go where the majority wants to go. That decision only imposes a duty to defend when a lawsuit includes both covered and uncovered claims, and thus would not apply to the majority’s example of a state employee who is sued only in his or her individual capacity. Further, First Newton National Bank distinguishes the duty to defend from the duty to indemnify, whereas the majority is talking about something different and wants to distinguish both of those duties from the ability to certify. For all these reasons, the majority’s private insurance analogy falls apart on careful analysis.
I can understand the majority’s reluctance to reach the logical conclusion of their reasoning and their desire to limit the collateral damage from today’s opinion. Still, there should be no doubt that this reluctance leads them to interpret section 669.2(3)(6) in two different ways in the same opinion.
VII. Conclusion.
Offering a policy justification for today’s decision, the majority says:
*600 In circumstances where the employee’s actions are not within the scope of their employment, the public fisc should not be used to pay for that employee’s defense or damages awarded a third party for that employee’s actions. The legislature has never authorized the expenditure of public funds to pay for the acts of its employees when done outside the scope of their employment. We are not going to do so today.
No one disputes this broad proposition that the public should not pay for actions taken by state employees outside the scope of their employment, including the defense of lawsuits against those employees. The majority, in this regard, is attacking a straw man. The real issue we need to resolve is who decides the employee’s status.
As I’ve already explained, I believe a plaintiff has two alternatives. If the plaintiff elects to proceed under the ITCA, then he or she authorizes the attorney general to decide whether the claims within that suit are in fact claims against a state employee in the scope of employment. Public funds will not pay for the defense of the employee unless the attorney general, an elected official answerable to the citizens of this State, makes this determination.
Alternatively, if the plaintiff wants to have a court decide whether the state employee acted within the scope of employment, he or she need only file a run-of-the-mill tort lawsuit against the employee. At that point, the employee must raise as a defense that he or she was acting within the scope of state employment. A court would decide whether the defense is valid.
In short, the ITCA contemplates a quick, early decision by either the attorney general or a court, depending on how the plaintiff chooses to bring his or her action. Either way, a third-party decision maker protects the public fisc. And the plaintiff, by choosing whether to proceed inside or outside the ITCA, gets to select that decision maker.
I want to note one further inconsistency in the majority opinion. The majority asserts that “our holding protects the public fisc by making sure the State does not have to pay any defense costs or damages arising out of a tort committed by state employees acting outside the scope of their employment.” Yet just a few paragraphs before, the majority indicates that if a state employee is sued on an allegation that he or she acted outside the scope of employment, the public fisc must pay for the employee’s defense if merely “a question exists” whether he or she acted in the scope of employment. Since a mere “question” in the eyes of the attorney general is enough to require the State to provide a defense, according to the majority, there obviously will be situations where the employee gets a state-paid defense even though it is later determined he or she was not acting in the course of employment.
Finally, I would like to close with a practical point. Notwithstanding the zealous and effective advocacy by both sides before this court, the attorney general’s certification actually eliminates only a small part of Godfrey’s case. It has no impact on Godfrey’s civil rights claims, including his allegation that he was discriminated against based on sexual orientation. Nor does it affect his constitutional claims or his extortion claim. The certification would only bar Godfrey’s intentional interference and defamation claims, which are expressly exempt from the ITCA. See Iowa Code § 669.14(4). The FTCA has comparable exemptions. See 28 U.S.C. § 2680(h). Presumably, these exemptions are based on the general notion of giving public officials some leeway in speaking and acting when they are performing their job duties. My vote *601 would be to preserve that leeway, by allowing the ITCA to operate as the legislature intended. Regardless, Godfrey would still have his full day in court on the discrimination and constitutional claims that are the core of his lawsuit.
WATERMAN, J., joins this dissent.

. In Thomas, for example, the defendants, whom the plaintiff had sued without going through ITCA procedures, moved for summary judgment. See 838 N.W.2d at 519. The district court granted summary judgment, finding that the defendants were employees of the State and that the plaintiffs’ claims fell within the scope of the Act. Id. at 520. We ultimately reversed the grant of summary judgment. Id. at 527. Similarly, in McGill v. Fish, a state university employee filed a gross negligence claim against several coemployees, without going through ITCA procedures. See 790 N.W.2d 113, 116 (Iowa 2010). The State brought a motion to dismiss on behalf of the coemployees based on failure to exhaust administrative remedies, which the district court denied. Id. We ultimately reversed the denial of the motion. Id. at 121.

. I recognize the state employee would remain a defendant to the extent any civil rights claims are asserted against him or her under chapter 216. See Vivian v. Madison, 601 N.W.2d 872, 878 (Iowa 1999) (“The legislature's use of the words 'person' and 'employer' in section 216.6(1), and throughout the chapter, indicates a clear intent to hold a 'person' subject to liability separately and apart from the liability imposed on an 'employer.' "). That is because those claims are governed by a separate administrative regime that subjects supervisory employees who commit wrongful discrimination to personal liability. Id.

. JUSTICE MANSFIELD: You gave the pre-suit notice—
MS. CONLIN: I did.
JUSTICE MANSFIELD: Did you include all of the claims including the defamation and extortion?
MS. CONLIN: Yes, sir, I did.
JUSTICE MANSFIELD: So when you say you didn’t bring it under the Iowa Tort Claims Act, you followed the Iowa Tort Claims Act procedure, would that be fair.
MS. CONLIN: I absolutely followed the Iowa Tort Claims Act procedure before I went to court just in case.

.Consider also the following excerpt from oral argument before this court, where the court and Godfrey's counsel discussed the possibility that certification might not affect Godfrey’s individual capacity or "common law’’ claims:
*594 JUSTICE WIGGINS: Do you think that this Court could say that your causes of action and the last five or six counts are barred under the State Tort Claim Act if— say there is no review of the certification and we agree with Mr. LaMarca's argument and we say there is no review, it’s final as to the State's Tort Claim Act, couldn’t we also say that as to any common law action it would not be final after review?
MS. CONLIN: I think that would be true, your Honor.
JUSTICE WIGGINS: Then the burden would be on you to show it was outside the course of their employment in those other actions?
MS. CONLIN: Yes, your Honor, and I wish I would have thought of that when I was in the district court but I did not.

. I acknowledge that the Alaska Supreme Court followed Lamagno in holding that a certification by the Alaska attorney general under Alaska’s counterpart to the Westfall Act is judicially reviewable. See State v. Heisey, 271 P.3d 1082, 1088-91 (Alaska 2012). I believe Lamagno does not apply to the ITCA, for the reasons I have already explained. Regardless, the Alaska Supreme Court did not embrace my colleagues’ view that certification can never occur when a state employee is named in his or her individual capacity. See id., at 1085-86 ("When a lawsuit is filed against state employees, AS 09.50.253(c) allows the Attorney General to determine whether the individually named defendants were acting within the scope of their employment during the conduct giving rise to the lawsuit.”). Further, while the Alaska court recognized a right to judicial review, it emphasized that the review should be performed by a court, not by a jury, and should always occur before trial. See id. at 1090-91.

. Furthermore, nothing in the Westfall Act affirmatively indicates the United States Attorney General’s certification authority extends to cases where a federal employee has been sued in his or her individual capacity, but the statute has been uniformly interpreted as granting that authority, because otherwise it would make no sense. See 28 U.S.C. § 2679(b)(1) (stating that the remedy is exclusive for injury or property loss “arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment”); see also, e.g., Hamad v. Gates, 732 F.3d 990, 994-95 (9th Cir.2013); Sharratt v. Murtha, 437 Fed.Appx. 167, 169 (3d Cir.2011); Parham v. Clinton, 374 Fed.Appx. 503, 506 (5th Cir.2010); Winters, 333 Fed.Appx. at 116.

. As the United States Supreme Court has said, "the purpose of the Westfall Act [is] to shield covered employees not only from liability but from suit.” Osborn v. Haley, 549 U.S. 225, 248, 127 S.Ct. 881, 898, 166 L.Ed.2d 819, 841 (2007). I think the general assembly had the same purpose when it enacted section 669.5, modeled after the Westfall Act, in 2006. See 2006 Iowa Acts ch. 1185, § 107 (codified at Iowa Code § 669.5 (2007)).

. Who decides if "a question exists”? The majority does not say, but presumably this would be the attorney general. According to the majority, the employee “should deliver the suit papers to the attorney general.”